JAMES REYNOLDS *vs.* JOHN B. HENNESSY AND PATRICK REYNOLDS.

A mortgage in the usual form gave to the mortgagee power of sale, making the mortgagee, his executors, administrators, and assigns, the mortgagor's " attorneys irrevocable, with full power of substitution and revocation," authorizing them to sell in case of default and after notice, and to pay the expenses of sale and the debt secured, accounting to the mortgagor, his heirs and assigns, for the surplus.

*Held*, that mortgagee did not hold an express or technical trust.

*Held*, further, that any surplus resulting from a sale under the powers of the mortgage was the equity of redemption converted into money.

*Held*, further, that this surplus was recoverable at law.

*Held*, further, that the right of action to recover this surplus accrued soon after the sale and without previous demand.

A mortgagee sold under the powers of the mortgage in A. D. 1872. In November, 1881, the successor in title of the mortgagor filed a bill in equity against the mortgagee for an account. The answer set up as a plea the statute of limitations.

*Held,* that the plea should be sustained.

The mortgage was executed in 1870. The mortgagor died in A. D. 1872, having conveyed his equity of redemption by a deed which was afterwards, in A. D. 1879, set aside as procured by the grantee's fraud.

*Held,* that the pendency of equitable proceedings to set aside this deed did not suspend the operation of the statute of limitations. The deed, void by fraud, could have been a - tacked at law by suing for the surplus of the mortgagee's sale, as well as in equity.

BILL IN EQUITY for an account. On a plea of the statute of limitations.

*January* 23, 1886. DURFEE, C. J. The case stated in the bill is this: The complainant formerly had a son, Bartley or Bartholomew by name, who died February 4, 1872. Some time before his death he was the owner of certain real estate, situate in the city of Providence, subject to a mortgage for $1,600, with interest, in favor of the defendant Hennessy, bearing date of February 17, 1870. During the illness which preceded said Bartley's death, the defendant Patrick Reynolds procured from him by fraud a conveyance of said estate and entered into possession ‚thereof. Immediately after the death of Bartley, the complainant, who was his sole heir at law, instituted a suit in equity against Patrick Reynolds for the annulment of said conveyance, and in February, 1879, obtained a decree annulling it. While this suit was pending, to wit, May 7, 1872, said Hennessy, by virtue of a power of sale in his mortgage deed, sold the estate at auction and conveyed it to said Patrick Reynolds, who bid therefor the sum of $4,950, being much more than the amount needed to pay the mortgage debt with interest and the expenses of sale. The bill charges that Hennessy has refused to account to the complainant for the surplus and prays that he may be decreed to account and to pay over what may be found due. The bill was filed in November, 1881. Hennessy has answered, setting up in his answer a plea of the statute of limitations. The case has been heard chiefly on the sufficiency of that plea.

The complainant contends that the plea is bad, because Hennessy, by selling the estate by virtue of the power, submitted himself to the obligations of the power, which amount to an express or technical trust in favor of the complainant, and against such a

trust the statute does not run.  The power is in the usual form.
It appoints Hennessy,, "his executors, administrators, and assigns,"
the mortgagor's " attorneys irrevocable, with full power of substi-
tution and revocation," and empowers them to sell and convey the
estate in case of default, after giving the notice prescribed; to re-
ceive the purchase-money, and out of it to pay the expenses of sale
and the mortgage debt, accounting to the mortgagor, his heirs and
assigns, for the surplus.  It is these express directions in regard to
the execution of the power which, the complainant argues, make
the power an express trust.   It will be observed, however, that the
power is expressed, not in terms of trust, but in terms of agency or
attorneyship.   The word " trust" or " trustee " nowhere occurs in
it.   It is doubtless true that a trust may exist without the use of
the word, courts looking through words to things.   But neverthe-
less the absence of the word is significant where the claim is that
the language creates an express trust.   The complainant cites
text-books and cases in which a mortgagee exercising the power is
called a trustee and treated as such.   He does not cite any case
which holds that the trust is express or technical.   Chancery,
when it asserts its jurisdiction over persons having charge of prop-
erty for the benefit of others, generally speaks of and treats them
as trustees, taking advantage of an analogy to subject them to the
rules which apply to trusts.   It proceeds thus in regard to execu-
tors, administrators, agents, and partners.   Such persons are in
chancery *quasi* or constructive trustees.   In the case at bar the
power of sale does not convey an estate, which is the usual mode of
creating a technical trust ; it delegates an authority.   It appoints
the mortgagee an attorney, and empowers him to sell, receive the
proceeds of the sale, pay the mortgage debt and expenses out of
the proceeds, accounting for the surplus, if any there be, to the
mortgagor.   The mortgagee may exercise the power or not, as he
chooses ; but if he chooses to exercise it, he virtually promises to
fulfil the conditions under which the power is granted.   Such a
promise may be implied at law as well as in equity, and we cannot
see why an action at law will not lie for a breach of it.   Indeed,
the mortgagee by the terms of the power receives the purchase-
money for himself only to the extent of the debt and his expenses,
being accountable for the rest of it to the mortgagor, his heirs and

assigns. The surplus is in fact the equity of redemption converted into money. Why, then, cannot the mortgagor recover it in an action for money had and received?

The case closely resembles the case of a factor who receives goods for sale on which he makes advances. He thereby acquires a lien which he is entitled to satisfy out of the sales. But the consignor can recover his balance after the lien is satisfied at law as well as in equity, notwithstanding that in equity the factor may be treated as if he were a trustee. *Scott* v. *Surnam*, Willes, 400, 405; Story's Eq. Juris. §§ 463, 464. The complainant contends that the trust is express and technical because the mortgagee has the legal title. He has the legal title, not as donee of the power, but as mortgagee. His title as mortgagee is peculiar, the mortgagor in possession being regarded as owner, subject to the mortgage, as well at law as in equity. The power does not belong to the mortgagee as such, but it is collateral to the mortgage, and the purchaser at a sale under the power takes, not as grantee of the mortgagee, but as grantee of the mortgagor, even when the deed is in the name of the mortgagee. *Hall* v. *Bliss*, 118 Mass. 554. A sale professedly under the power, but not pursuant to its terms, operates at most only as an assignment of the mortgage. All this goes to show that the mortgagee, in exercising the power, is not considered to have the same sort of legal title as a trustee under a technical trust. In *Robertson* v. *Norris*, 1 Giffard, 421, the Vice-Chancellor, commenting on the saying of Lord Eldon in *Downes* v. *Grazebrook*, 3 Meriv. 200, that a mortgagee, when he sells under a power, " cannot be considered otherwise than as a trustee," remarks : " That expression is to be understood in this sense: that the power being given to enable him to recover the mortgage money, the court requires that he shall exercise the power of sale in a provident way, with a due regard to the rights and interests of the mortgagor in the surplus money to be produced by the sale." The remark is a recognition of the fact that a mortgagee, in exercising the power, is a *quasi* not a technical trustee. Technically he is the attorney of the mortgagor. *Watson* v. *Saul*, 1 Giffard, 188, 198; *Dickenson* v. *Teasdale*, 1 De G., J. & S. 52, 60.

It is admitted that the statute applies, if the remedies are concurrent at law and in equity; or, in other words, if the trust is

not technical so as to be exclusively cognizable in equity. Wood on Limitations, § 200. The cases are numerous in which the surplus has been sued for and recovered in actions at law. *Cook* v. *Basley*, 123 Mass. 396, and cases there cited; *Stoever* v. *Stoever*, 9 Serg. & R. 434; *Davenport* v. *McChesney*, 86 N. Y. 242; *Flanders* v. *Thomas*, 12 Wisc. 410; *Vick* v. *Smith*, 83 N. Car. 80; *Bailey* v. *Merritt*, 7 Minn. 159; *Webster* v. *Singley*, 53 Ala. 208; and see, also, *Cope* v. *Wheeler*, 41 N. Y. 303; *Ballinger* v. *Bourland*, 87 Ill. 513. We do not find that any of these cases refer the jurisdiction to any peculiar local law. In *Stoever* v. *Stoever*, *supra*, the court expressly declares, "If there was a court of chancery, *indebitatus assumpsit* for money had and received would lie." 9 Serg. & R. 454. Nor do we find that the courts make any distinction in this respect between the mortgagor and persons holding under him, the duty imposed by the terms of the power being deemed sufficient to raise a promise to pay the surplus to the owner of the equity of redemption, if the mortgagee sells under the power, since the surplus is what the equity sells for and belongs to the owner. We also think that the right to sue for the surplus accrued forthwith or very shortly after the sale, without any previous demand, it being the duty of the mortgagee receiving the proceeds to ascertain the surplus immediately and pay it over. *Bailey* v. *Merritt*, 7 Minn. 159; *Fussell* v. *Hennessy*, 14 R. I. 550. Nor do we see how the pendency of the former suit against Patrick Reynolds, to set aside the deed from Bartley to him for fraud, could stay the running of the statute. If the deed from Bartley was procured by fraud, it was avoidable at law as well as in equity, and the complainant might have disaffirmed it by suing for the surplus, as well as by prosecuting his suit in equity.

The bill as framed is simply a bill for an account. As such, we think it is barred by the statute of limitations. It makes Patrick Reynolds a defendant with Hennessy, but states no case for relief against him. Hennessy in his unsworn answer alleges that he received from Patrick Reynolds only the amount necessary to pay the mortgage debt and expenses, because, being ignorant of the complainant's claim, he believed Patrick Reynolds to be entitled to the surplus. No testimony is adduced in support of the allegation, and, in the absence of such testimony, we think the acknowledg-

ment of the receipt of the purchase-money, made in Hennessy's deed to Patrick Reynolds, is *primâ facie* proof that it was received. The question whether the power of sale would have been so fully executed as to cut off the right to redeem, if only the mortgage debt and expenses were paid, does not arise on the pleadings and proof as they stand.

*Plea sustained and bill dismissed without costs.*

*Charles Bradley, George B. Barrows & Albert R. Greene*, for complainant.

*William H. Greene & Patrick J. McCarthy*, for respondents.

