CLAUD McCAULEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ORA McCAULEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 25620, 25714. Promulgated October 11, 1929.

*Arthur V. Wright, Esq.*, for the petitioners.
*Brice Toole, Esq.*, for the respondent.

888

OPINION.

LITTLETON: The contention advanced by the petitioners is that the instrument signed by them on December 25, 1918, created a valid trust, and that, accordingly, one-half of the income realized thereunder was not income to them. But when we come to examine the instrument itself, both as to the manner in which it was drawn

and the various terms and conditions set out therein, together with the action of the parties with respect thereto, we are not satisfied that a trust was thereby created of the character contemplated by section 219 of the Revenue Act of 1921.

In the first place, we do not find in the writing the apt or technical words or phrases with which trust agreements are ordinarily created, and it is generally prepared in an unskillful manner in so far as a trust is concerned. Nowhere do we find the word " trust " or " trustee " or words of a similar character, nor is it stated that any property is placed in trust for the benefit of the children in question, or that the father was to serve as trustee. In making the foregoing criticism, we are not unmindful of the well established doctrine that no particular form of words is necessary to create a trust, so long as there is reasonable certainty as to the property, the objects and the beneficiaries (*Chicago, Milwaukee & St. Paul Ry. Co.* v. *Des Moines Union Ry. Co.*, 254 U. S. 196), but it is also true that the use or nonuse of words of a trust import should be given weight in determining the character of a given instrument. That is, the presence of these words does not necessarily mean that a trust has been created, or their absence that a trust has not been created, but the presence or absence of these words is certainly entitled to weight as tending to show the existence or nonexistence, respectively, of a trust in an instrument which is otherwise doubtful. In *Reynolds* v. *Hennessey*, 2 Atl. 701, where the court was dealing with an instrument which one of the parties contended created a trust, the following statement was made:

* * * The word " trust " or " trustee " nowhere occurs in it. It is doubtless true that a trust may exist without the use of the word, courts looking through words to things; but, nevertheless, the absence of the word is significant where the claim is that the language creates an express trust. * * *

And, again, in *Farrington* v. *Stucky*, 165 Fed. 325, in dealing with a case where the word " trustee " was used, the court said:

* * * It is urged by counsel representing the complainant, that the word "trustee" should be regarded as merely descriptio personae; but the doctrine which he invokes is confined to negotiable instruments or contracts executed by an agent in his own name. When dealing with equitable considerations, such as are presented by this record, the affixing of the term "trustee" to the name of the holder of securities is to be given effect, and clearly imports that he does not hold in his own personal right, but for the benefit of another. * * *

In the next place, the terms and conditions of the instrument are such that it is doubtful whether anything passed to Claud and/or Ora McCauley, as trustees, to be held in trust for their children, in such a manner that the entire income would not be taxable to them just as if the writing had not been executed. The instrument pro-

vides that in so far as the surface of the lands in question is concerned, this was to belong unconditionally to Claud McCauley. As to the mineral rights, it was provided that " the oil, gas and mineral in and under said lands and all of same are to belong to and be the property of said Claud and Ora McCauley, and their two children, * * * each of said four persons owning an undivided one-fourth interest " therein but that the said Claud and Ora McCauley reserved the right to sell any or all of said oil, gas or other minerals at any time, and at any price which may by them be deemed best, just as though this contract had never been made. The proceeds from any sales made and any income from rents or royalties on account of said oil, gas or minerals were to belong to the four above-named individuals, one-fourth to each. Prior to the date of the execution of the agreement in question, all of the lands referred to therein were covered by leases, although, with the exception of one nonpaying well, no oil or gas wells had yet been drilled on the premises. What, therefore, appears to have been reasonably contemplated by the petitioners was that as royalties were received, they would be divided among the four parties mentioned in the agreement on the basis of one-fourth to each. The leases were not submitted in evidence and, therefore, we know nothing as to their terms, but if considered as leases which gave to the lessees the right to take all minerals beneath the surface, and required the payment to the lessor of royalties, we would have the situation which seems to have been contemplated, namely, an assignment of the future income from these properties in a manner analogous to that which existed in *Bing* v. *Bowers*, 22 Fed. (2d) 450; 26 Fed. (2d) 1017, and wherein the court said:

To permit the assignor of future income from his own property to escape taxation thereon by a gift grant in advance of the receipt by him of such income would by indirection enlarge the limited class of deductions established by statute. * * *

That this was all that was intended or accomplished is further shown by the powers given to Claud McCauley and his actions with respect to the income received. The portion of the proceeds which were to belong to the children was to be kept by him and invested and controlled by him in any manner that was deemed best until the younger boy became of age and within that time the agreement was revocable at the pleasure of the said Claud and Ora McCauley. No bond was to be required of Claud McCauley in the performance of the duties imposed upon him. The money to be turned over by him to each son was one-fourth of the amount received from these properties, less the amounts used by them and expended by him in their behalf. What actually occurred was that the royalties were received by the father and paid to the children to some extent, as if the agree-

ment had not been executed; in some years more would be paid to one son than to the other, and in other years the greater amount would be paid to the other son. In one instance, one son was going into business and was, accordingly, given a greater amount in that year. On another occasion, the other son got married and apparently needed more than that to which he was entitled under the terms of the agreement and this was paid to him. In the year before us more than one-half of the total royalties was paid to the two sons, and, while the total amounts actually paid to them from 1919 to 1926 were substantially the same for each son, these amounts were in excess of that to which each was entitled. The explanation given by the father (and we think this the true one) was that the funds were handled in this way because of his fatherly interest in his children. What, therefore, seems to have occurred with respect to the distribution of income was none other than it would have been had the instrument not been executed. The father received the income and he gave it to the children in accordance with what he considered their several necessities or best interests, not confining himself either in a given year or in total amounts to that called for under the agreement. In other words, no new duties were performed by Claud McCauley, if designated as trustee, from that which he would have performed without the agreement.

A case having many of the elements found in the situation before us was that of *Stoddard* v. *Eaton*, 22 Fed. (2d) 184, wherein the court held that the instrument there in question did not create a trust of the character contemplated by section 219 of the Revenue Act of 1918, which is not unlike the section in the 1921 Act, which is here controlling. In disposing of the case, the court said:

> *After all, the word "trust," as used in section 219 of the Revenue Act of 1918 (Comp. St. § 6336 1/8ii), can hardly have been intended to comprehend every instance in which a trust is recognized in equity.* A trust ex maleficio, a resulting trust, or a constructive trust are examples of trusts which do not fit into the frame of the statute. A trust, as therein understood, is not only an express trust, but a genuine trust transaction. *A revenue statute does not address itself to fictions.* (Italics ours.)

And also in the same opinion the following appears:

> The contention of the plaintiff is that the so-called "trust agreements" worked no severance of the trusteed securities from the corpus of the plaintiff's property, and that these securities, whether in the hands of the trustees or not, were always his own assets, and therefore that the losses sustained on their sale were proper items of deduction from his gross income. *He says that the verbal form of the transaction does not necessarily control the construction to be placed upon it; that the environing conditions—the motivation, the reactions of the parties to the situation thus integrated and to its developing phases—all have a significance which the law must evaluate before the genuine relation of the transactions to the Income Tax Act may be ascertained.* With this suggestion, stated in these general terms, I am disposed to

agree. For we are not here concerned with the rights of contracting parties who may evoke a rule of estoppel to prevent the change of a comma in the written bond, nor are there innocent third parties involved who have relied upon a title or upon an authority expressed in writing. (Italics ours.)

This case was followed by the Board in *N. H. Boynton,* 11 B. T. A. 1352, where it was said that " To say that the income in question was that of the fiduciary rather than that of Boynton [settlor] would be to let the form prevail over the substance. This we do not believe Congress intended."

Similarly, when we view the substance of what occurred in the situation before us, taking into consideration not only the instrument itself, but also the actions of the parties with respect thereto, we are not satisfied that a trust, as contemplated by the Revenue Act of 1921, was thereby created. Not only did Claud and Ora McCauley reserve to themselves the power of revocation within the period with which we are here concerned, but also the dealings of Claud McCauley with the income were not different from what they apparently would have been without the execution of the agreement. Neither the annual distributions nor the distributions over the period of years, as to which we were advised, were on the basis of a one-fourth royalty interest to each son, but more as a father would deal out monies to his two and only sons as he felt their needs so required. And even if there existed a reversionary interest in the leased property or the possibility of such an interest, the control was not changed, in so far as the children were concerned, from what it was prior to the execution of the instrument in question.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

PHILLIPS, GREEN, and MILLIKEN dissent.