WARREN H. CORNING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86898. Promulgated May 28, 1937.

*David A. Gaskill, Esq.*, and *Earl P. Schneider, Esq.*, for the petitioner.

*T. M. Mather, Esq.*, for the respondent.

### OPINION.

Leech: Respondent determined a deficiency in petitioner's income tax for 1934 in the sum of $3,776.71, of which $3,713.04 is in controversy. The disputed tax arises by reason of the increasing of petitioner's reported income by the amount of the income realized, but not distributed, by the trustees in that year, under two trusts created in prior years by petitioner.

The facts are stipulated. The two trust instruments, together with the amendments executed, are made a part of the formal stipulation filed. Briefly stated, the facts are that petitioner in 1929 executed two trust instruments. By one he conveyed to the Union Trust Co. of Cleveland, Ohio, as trustee, certain corporate stock, such of the yearly income as the trustee might "deem advisable" to be paid to him for life, then to his wife for her life. On the death of the survivor of these two the corpus was to be divided among petitioner's direct descendants or in case there were none surviving, to be paid over to petitioner's father, if living. The trustee was given authority to sell the trust property, to invest funds of the trust, and otherwise deal with the trust corpus without legal restrictions otherwise applicable to trustees, and to lend money to or purchase property from petitioner's estate without security and without liability for loss. It was provided that the trustee should, before purchase or sale of secu-

rities, secure the approval, during his life, of petitioner's father and after his death, of petitioner, and there was specifically reserved to petitioner the right at any time to remove the trustee and substitute another merely upon giving written notice.

It was further provided by this trust that petitioner's father might, during his life, amend or terminate the trust in whole or in part and change any beneficial interest thereunder. In case of termination of the trust under this power, the corpus was to be paid over to petitioner, if living, or if not living, then to any one specified by petitioner's father. Petitioner also reserved the right, after the death of his father, but in no event prior to 1932, to amend or terminate the trust, it being provided, however, that he might not revest himself in any year with the corpus of the trust unless he had given notice in writing of his intended action not later than November 30 of the preceding year.

On December 1, 1931, petitioner's father, Henry W. Corning, in the exercise of his power to amend the terms of the trust instrument, executed an amendment providing that the income of the trust during the life of petitioner should be accumulated and added to the corpus, and changing from 1932 to 1937 the earliest date at which petitioner might terminate the trust. On August 8, 1933, petitioner's father executed a second amendment providing that sale, lease, investment, or reinvestment of the trust estate until October 1, 1933, should be made by the trustee upon direction of petitioner, and that the trustee would be absolved from any and all responsibility for acts done under such direction. By a third amendment, executed October 1, 1933, this power of direction by petitioner was extended to July 1, 1935.

By the second trust certain securities were transferred by petitioner to one S. Roswell Shepherd as trustee. The beneficiaries were the same as in the first trust. The powers granted to the trustee and petitioner's father and those reserved to the petitioner were the same as in the first trust, with the one exception that petitioner was not limited as to time with respect to his right of revocation or amendment of the trust, except that it be subsequent to his father's death. This trust differs from the first mainly in the amendments executed by petitioner's father under the power granted him.

Thus, on January 17, 1933, petitioner's father executed an amendment changing the provision for payment by the trustee in its sole discretion of all or part of the income to petitioner, to provide that the income in the sole discretion of the trustee be, during the life of petitioner, accumulated or paid to petitioner's wife, his mother, his father, and/or any descendants of him surviving. Any income not so distributed by the trustee was to be accumulated and set apart in

a separate "Fund A." Upon petitioner's death "Fund A" was to be added to the corpus of the trust and the income from such corpus paid over to petitioner's wife for life and upon her death to be paid in equal shares to petitioner's children, or, per stirpes, to descendants, if any, of children not then living. By this amendment it was further provided:

I hereby authorize and empower my father, HENRY W. CORNING, during his life, and thereafter I reserve to myself, during my life, the right, to change or modify any of the administrative provisions of this agreement and to change any beneficial interest hereunder and to revoke this trust either in whole or in part, by delivering to the Trustee an instrument in writing acknowledged like a conveyance of real property entitled to record in New York, unless acknowledgment be waived by it, and in the event of the revocation of all or a part of this trust by my father, the Trustee shall pay over the principal thereof so revoked (excluding, however, the principal of the said Fund A) to me if I am then living, or if I am not then living the Trustee shall pay over the entire principal thereof (including the principal of the said Fund A) to my father or to such person or persons as he may designate in writing to the Trustee; provided, however, that, during my life, neither my father nor I shall have the power, at any time prior to January first, 1938, to revoke this trust either in whole or in part or to direct that any part of the income of the trust be paid over or held or accumulated for future distribution to me or be applied by the Trustee to the payment of premiums upon policies of insurance on my life, and provided further, that during my life and after January first, 1938, neither my father nor I shall have the power at any time during any taxable year within the meaning of the revenue laws of the United States to exercise any of the aforesaid powers not exercisable before said date, except that, if, during the month of December in the taxable year 1937 or during the month of December in any taxable year thereafter, my father, or in case he is not living, then if I, deliver to the Trustee during such month a written notice that it is desired to have such powers during any specified time after the first day of the next succeeding taxable year, then during such specified time, but neither prior nor, except upon similar notice, subsequent thereto, my father if living and if he be not living, then I, shall have full power by instrument of the character hereinbefore specified, to revoke this trust in whole or in part or to direct that any part of the income of the trust thereafter accruing be paid over or held or accumulated for future distribution to me, or be applied by the Trustee to the payment of premiums upon policies of insurance upon my life. Anything herein to the contrary notwithstanding, neither my father nor I shall at any time have the right to vest in myself title to any part of the said Fund A, and the Trustee shall in no event pay over any of the principal of said Fund A to me during my life, and in the event of the revocation of this trust in whole or in part during my life any part or all of the said Fund A so affected shall be paid over by the Trustee to the persons named and in the proportions designated by my father, Henry W. Corning, if he is then living, by an instrument in writing delivered to the Trustee, and any affected part of the said Fund not validly so appointed shall be paid over to the persons named and in the proportions designated by my mother, EDITH W. CORNING, if she is then living; provided, however, that in no event shall either my father or my mother have the power to direct that any portion of said Fund A shall be paid over to me, and any affected part not validly so appointed shall

be paid over to my said wife if she is then living, or if not, in equal shares per stirpes to my descendants then living, or if none, in equal shares per stirpes to my father's descendants (other than myself) then living. I also reserve the right for myself or any other person to increase this trust by delivering property or making insurance policies payable to the Trustee for that purpose or by bequest or devise by will. No income of the trust shall be applied to the payment of premiums upon policies of insurance on my life, unless and until direction shall be given to the Trustee therefor upon compliance with the conditions hereinbefore specified. In no case shall the duties and liabilities of the Trustee hereunder be increased without its written consent.

None of the income of the two trusts for 1934 was distributed but all was accumulated by the trustees.

Section 166 of the Revenue Act of 1934 provides:

SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—
(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or
(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor.

Respondent, by article 166–1, Regulations 86, has construed this section as follows:

ART. 166–1. *Trusts, with respect to the corpus of which, the grantor is regarded as remaining in substance the owner.*—
(b) Section 166 defines with particularity instances in which the grantor is regarded as in substance the owner of the corpus by reason of the fact that he has retained power to revest the corpus in himself. For the purposes of this article the grantor is deemed to have retained such power if he, or any person not having a substantial interest in the corpus or the income therefrom adverse to the grantor, or both, may cause the title to the corpus to revest in the grantor. If the title to the corpus will revest in the grantor upon the exercise of such power, the income of the trust is attributed and taxable to the grantor regardless of—
(1) Whether such power or ability to retake the trust corpus to the grantor's own use is effected by means of a power to revoke, to terminate, to alter or amend or to appoint;
(2) whether the exercise of such power is conditioned on the precedent giving of notice, or on the elapsing of a period of years, or on the happening of a specified event;
(3) the time at which the title to the corpus will revest in the grantor in possession and enjoyment, whether such time is within the taxable year or not, or whether such time be fixed, determinable, or certain to come;
(4) whether the power to revest in the grantor title to the corpus is in the grantor, or in any person not having a substantial interest in the corpus or income therefrom adverse to the grantor, or in both. A bare legal interest, such as that of a trustee, is never substantial and never adverse;
(5) when the trust was created.

Sections 166 of the Revenue Acts of 1928 and 1932 were similar to the above quoted section of the 1934 Act here applicable with the exception that the former provide that, to tax any of the trust income to the grantor, the power of revocation must exist "within the taxable year." That limitation led to the creation of trusts with the power of revocation only upon the giving of notice of that intent more than 12 months in advance. *Langley* v. *Commissioner*, 61 Fed. (2d) 796; *Faber* v. *United States*, 1 Fed. Supp. 859; *Lewis* v. *White*, 61 Fed. (2d) 1046, affirming 56 Fed. (2d) 390; *Mabel A. Ashforth et al., Executors*, 26 B. T. A. 1188. It was to meet this practice and prevent this method of tax avoidance that the change was made in section 166 of the 1934 Act.[1] This provision has been reenacted without alteration in the Revenue Act of 1936 in the face of its interpretation by the Commissioner by his regulations above quoted.

In the present case under his interpretation of section 166, respondent has included in the income of the petitioner all of the income of the two present trusts, for the reason that under each trust petitioner has reserved the power to revoke or amend, under certain conditions, and thus repossess the corpus. It is petitioner's contention that section 166 does not apply because his right of revocation was subject to a contingency which had not yet happened and the occurrence of which was beyond his power to control. That contingency was the death of his father without exercise of a power of amendment granted the father, which might be used to destroy petitioner's right of revocation.

Section 166, here involved, and its companion section 167 of the Revenue Act of 1934,[2] were both enacted to prevent the avoidance of surtax through creation of trusts subject in some manner to the control of the grantor. They, as well as the similarly numbered sections of the 1928 and 1932 Acts, constitute a reenactment and exten-

---

[1] Conference Report No. 1385, 73d Cong., 2d sess., p. 24.
[2] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o) relating to the so-called "charitable contribution" deduction); then such part of the income of the trust shall be included in computing the net income of the grantor.

(b) As used in this section, the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question".

sion of sections 219 (g) and (h) of the Acts of 1924 and 1926. The court in *Kaplan* v. *Commissioner*, 66 Fed. (2d) 401, in construing section 219 of the Revenue Act of 1924, said:

> \* \* \* This provision was intended, as its legislative history clearly shows, as a protection to the government against evasion of income taxes, especially surtaxes, by means of trusts whereby the grantor, although parting with the legal control of the trust property, reserved a practical control over the income of it which could, in point of fact, be exercised for his own benefit. As Kaplan named himself trustee, the large discretion given in the trust instrument to the trustee as to the accumulation and payment of income is attributable to him personally. By the terms of the trust that discretion can be exercised for his own possible benefit, within wide limits. We see no occasion for refinement of construction against the government. We think the statute means that if under any circumstances or contingencies any part of the accumulated income might inure to the benefit of the grantor such portion of the income is taxable to him.

It is argued by respondent that the reasoning of the court in the *Kaplan* case is sound and that there is no occasion for a refinement of construction against the Government in interpreting section 166 of the 1934 Act. Respondent thus urges that this provision shall be applied in taxing to the grantor the income of a trust where he has reserved to himself, at any time or under any conditions, a right of revocation even though the exercise of such right be subject to a condition precedent over which the grantor has no control.

On this question we agree with respondent. Petitioner has reserved to himself the power, in the case of each trust, after his father's death and after 1936, to revest himself with the corpus. It is true that his father is granted the right to amend the trust and change any beneficial interest thereunder. But there has been no amendment executed by his father divesting petitioner of the right reserved to him at some time to revest himself with the trust corpus. Until petitioner is divested of that right by the exercise of the power granted to his father, he stands possessed of it. Therefore, during the pending tax year petitioner had the right to revest the trust corpus in himself at some time in the future. *Higgins* v. *White*, 18 Fed. Supp. 986. Cf. *Fanny M. Dravo et al., Executors*, 34 B. T. A. 190.

And, although we conclude that the respondent's interpretation of section 166 by Regulations 86, article 166–1, *supra*, in applying it in cases where the right of revocation reserved is subject to a condition precedent which has not yet occurred, is reasonable and that under that section the income of the trusts here in question for the year 1934 is taxable to this petitioner, it appears that section 167 also applies, since the income from both trusts for the tax year was accumulated. In the first trust the power reserved by petitioner

to revest in himself the corpus existed also with respect to the accumulated income. In the second trust, although it was provided that the accumulated income should be set apart and designated as "Fund A", and that under no circumstances could petitioner or his father vest in petitioner title to that particular fund, there is no provision preventing its use in payment of premiums upon policies of insurance on petitioner's life. Thus, it is apparent that under certain conditions the accumulated income of the second trust may be applied, after the death of petitioner's father, to the payment of such premiums.

It is also intimated by respondent that, aside from the provisions of sections 166 and 167 of the Revenue Act of 1934, the petitioner retained such "substance of enjoyment" of the trust property of both trusts as to warrant the disregard of both trust entities and so, their income should be taxed to petitioner on that theory. He cites *Burnet* v. *Wells*, 289 U. S. 670, and *Douglas* v. *Willcuts*, 296 U. S. 1.

It is true, under the first trust, petitioner had the power to remove the trustee at will by merely giving written notice. Under this provision he could at any time designate himself as trustee and exercise the wide powers which he had granted the trustee in respect of the trust property, including the right to lend the trust corpus to his estate without security and to invest and reinvest it in such securities and on such terms as he might direct. During the year 1934 he had the full and unrestricted power to direct the actions of the trustee in the handling of the corpus. The trustee was "absolved from any and all responsibility", if it were shown that he acted upon petitioner's direction.

With respect to the second trust, petitioner similarly reserved the power to remove the trustee at will and substitute a successor. The broad discretion granted the trustee in the first instrument is found here again with the added provision that the trustee might determine petitioner or his father, upon such evidence as he might consider sufficient, to be incompetent to direct the management of the trust property, in which event the party so determined to be incompetent would be considered, for the purposes of the trust instrument, as "dead." Under this provision petitioner could, at any time through his action, substitute himself as trustee and remove his father completely from any power to direct management of the trust property or amend or revoke the trust instrument.

However, at all events, neither of the cases cited is authority for a disregard of the trust entities here, unless that was the ground for the decision of the Supreme Court in *Douglas* v. *Willcuts*, *supra*. On that point no opinion is expressed.

*Decision will be entered for the respondent.*