WARREN H. CORNING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86898.   Promulgated July 13, 1937.

*David A. Gaskill, Esq.*, and *Earl P. Schneider, Esq.*, for the petitioner.

*T. M. Mather, Esq.*, for the respondent.

#### OPINION.

LEECH: On May 28, 1937, this Board promulgated an opinion herein—35 B. T. A. 1162. On the 1st day of June 1937, a decision of the Board was entered pursuant to that opinion. June 11, 1937, petitioner moved for Board review of that opinion. June 15, 1937, the Chairman granted that motion. For cause appearing of record, the following opinion is substituted for that opinion of the Board, promulgated May 28, 1937, which latter opinion is hereby vacated.

Respondent determined a deficiency in petitioner's income tax for 1934 in the sum of $3,776.71, of which $3,713.04 is in controversy. The disputed tax arises by reason of the increasing of petitioner's

reported income by the amount of the income realized, but not distributed, by the trustees in that year, under two trusts created in prior years by petitioner.

The facts are stipulated. The two trust instruments, together with the amendments executed, are made a part of the formal stipulation filed. Briefly stated, the facts are that petitioner in 1929 executed two trust instruments. By one he conveyed to the Union Trust Co. of Cleveland, Ohio, as trustee, certain corporate stock, such of the yearly income as the trustee might "deem advisable" to be paid to him for life, then to his wife for her life. On the death of the survivor of these two the corpus was to be divided among petitioner's direct descendants or in case there were none surviving, to be paid over to petitioner's father, if living. The trustee was given authority to sell the trust property, to invest funds of the trust, and otherwise deal with the trust corpus without legal restrictions otherwise applicable to trustees, and to lend money to or purchase property from petitioner's estate without security and without liability for loss. It was provided that the trustee should, before purchase or sale of securities, secure the approval, during his life, of petitioner's father and after his death of petitioner, and there was specifically reserved to petitioner the right at any time to remove the trustee and substitute another merely upon giving written notice.

It was further provided by this trust that petitioner's father might, during his life, amend or terminate the trust in whole or in part and change any beneficial interest thereunder. In case of termination of the trust under this power, the corpus was to be paid over to petitioner, if living, or if not living, then to any one specified by petitioner's father. Petitioner also reserved the right, after the death of his father, but in no event prior to 1932, to amend or terminate the trust, it being provided, however, that he might not revest himself in any year with the corpus of the trust unless he had given notice in writing of his intended action not later than November 30 of the preceding year.

On December 1, 1931, petitioner's father, Henry W. Corning, in the exercise of his power to amend the terms of the trust instrument, executed an amendment providing that the income of the trust during the life of petitioner should be accumulated and added to the corpus, and changing from 1932 to 1937 the earliest date at which petitioner might terminate the trust. On August 8, 1933, petitioner's father executed a second amendment providing that sale, lease, investment, or reinvestment of the trust estate until October 1, 1933, should be made by the trustee upon direction of petitioner, and that the trustee would be absolved from any and all responsibility for acts done under

such direction. By a third amendment, executed October 1, 1933, this power of direction by petitioner was extended to July 1, 1935.

By the second trust certain securities were transferred by petitioner to one S. Roswell Shepherd as trustee. The beneficiaries were the same as in the first trust. The powers granted to the trustee and petitioner's father and those reserved to the petitioner were the same as in the first trust, with the one exception that petitioner was not limited as to time with respect to his right of revocation or amendment of the trust, except that it be subsequent to his father's death. This trust differs from the first mainly in the amendments executed by petitioner's father under the power granted him.

Thus, on January 17, 1933, petitioner's father executed an amendment changing the provision for payment by the trustee in its sole discretion of all or part of the income to petitioner, to provide that the income in the sole discretion of the trustee be, during the life of petitioner, accumulated or paid to petitioner's wife, his mother, his father, and/or any descendants of his surviving. Any income not so distributed by the trustee was to be accumulated and set apart in a separate "Fund A." Upon petitioner's death "Fund A" was to be added to the corpus of the trust and the income from such corpus was to be paid over to petitioner's wife for life and upon her death to be paid in equal shares to petitioner's children, or, per stirpes, to descendants, if any, of children not then living. By this amendment it was further provided:

I hereby authorize and empower my father, HENRY W. CORNING, during his life, and thereafter I reserve to myself, during my life, the right, to change or modify any of the administrative provisions of this agreement and to change any beneficial interest hereunder and to revoke this trust either in whole or in part, by delivering to the Trustee an instrument in writing acknowledged like a conveyance of real property entitled to record in New York, unless acknowledgment be waived by it, and in the event of the revocation of all or a part of this trust by my father, the Trustee shall pay over the principal thereof so revoked (excluding, however, the principal of the said Fund A) to me if I am then living, or if I am not then living the Trustee shall pay over the entire principal thereof (including the principal of the said Fund A) to my father or to such person or persons as he may designate in writing to the Trustee; provided, however, that, during my life, neither my father nor I shall have the power, at any time prior to January first, 1938, to revoke this trust either in whole or in part or to direct that any part of the income of the trust be paid over or held or accumulated for future distribution to me or be applied by the Trustee to the payment of premiums upon policies of insurance on my life, and provided further, that during my life and after January first, 1938, neither my father nor I shall have the power at any time during any taxable year within the meaning of the revenue laws of the United States to exercise any of the aforesaid powers not exercisable before said date, except that, if, during the month of December in the taxable year 1937 or during the month of December in any taxable year thereafter, my father, or in case he is not living, then if I, deliver to the Trustee during such month a written notice that it is desired

to have such powers during any specified time after the first day of the next succeeding taxable year, then during such specified time, but neither prior nor, except upon similar notice, subsequent thereto, my father if living and if he be not living, then I, shall have full power by instrument of the character hereinbefore specified, to revoke this trust in whole or in part or to direct that any part of the income of the trust thereafter accruing be paid over or held or accumulated for future distribution to me, or be applied by the Trustee to the payment of premiums upon policies of insurance upon my life. Anything herein to the contrary notwithstanding, neither my father nor I shall at any time have the right to vest in myself title to any part of the said Fund A, and the Trustee shall in no event pay over any of the principal of said Fund A to me during my life, and in the event of the revocation of this trust in whole or in part during my life any part or all of the said Fund A so affected shall be paid over by the Trustee to the persons named and in the proportions designated by my father, Henry W. Corning, if he is then living, by an instrument in writing delivered to the Trustee, and any affected part of the said Fund not validly so appointed shall be paid over to the persons named and in the proportions designated by my mother, Edith W. Corning, if she is then living; provided, however, that in no event shall either my father or my mother have the power to direct that any portion of said Fund A shall be paid over to me, and any affected part not validly so appointed shall be paid over to my said wife if she is then living, or if not, in equal shares per stirpes to my descendants then living, or if none, in equal shares per stirpes to my father's descendants (other than myself) then living. I also reserve the right for myself or any other person to increase this trust by delivering property or making insurance policies payable to the Trustee for that purpose or by bequest or devise by will. No income of the trust shall be applied to the payment of premiums upon policies of insurance on my life, unless and until direction shall be given to the Trustee therefor upon compliance with the conditions hereinbefore specified. In no case shall the duties and liabilities of the Trustee hereunder be increased without its written consent.

None of the income of the two trusts for 1934 was distributed but all was accumulated by the trustees.

Section 166 of the Revenue Act of 1934 provides:

SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor.

Respondent, by article 166–1, Regulations 86, has construed this section as follows:

ART. 166–1. *Trusts, with respect to the corpus of which, the grantor is regarded as remaining in substance the owner.—*

*     *     *     *     *     *     *

(b) Section 166 defines with particularity instances in which the grantor is regarded as in substance the owner of the corpus by reason of the fact that

he has retained power to revest the corpus in himself. For the purposes of this article the grantor is deemed to have retained such power, if he, or any person not having a substantial interest in the corpus or the income therefrom adverse to the grantor, or both, may cause the title to the corpus to revest in the grantor. If the title to the corpus will revest in the grantor upon the exercise of such power, the income of the trust is attributed and taxable to the grantor regardless of—

(1) whether such power or ability to retake the trust corpus to the grantor's own use is effected by means of a power to revoke, to terminate, to alter or amend or to appoint;

(2) whether the exercise of such power is conditioned on the precedent giving of notice, or on the elapsing of a period of years, or on the happening of a specified event;

(3) the time at which the title to the corpus will revest in the grantor in possession and enjoyment, whether such time is within the taxable year or not, or whether such time be fixed, determinable, or certain to come;

(4) whether the power to revest in the grantor title to the corpus is in the grantor, or in any person not having a substantial interest in the corpus or income therefrom adverse to the grantor, or in both. A bare legal interest, such as that of a trustee, is never substantial and never adverse;

(5) when the trust was created.

Sections 166 of the Revenue Acts of 1928 and 1932 were similar to the above quoted section of the 1934 Act here applicable with the exception that the former provide that, to tax any of the trust income to the grantor, the power of revocation must exist "within the taxable year." That limitation led to the creation of trusts with the power of revocation only upon the giving of notice of that intent more than 12 months in advance. *Langley* v. *Commissioner*, 61 Fed. (2d) 796; *Faber* v. *United States*, 1 Fed. Supp. 859; *Lewis* v. *White*, 61 Fed. (2d) 1046, affirming 56 Fed. (2d) 390; *Mabel A. Ashforth et al., Executors*, 26 B. T. A. 1188. It was to meet this practice and prevent this method of tax avoidance that the change was made in section 166 of the 1934 Act.[1] This provision has been reenacted without alteration in the Revenue Act of 1936 in the face of its interpretation by the Commissioner by his regulations above quoted.

In the present case under his interpretation of section 166, respondent has included in the income of the petitioner all of the income of the two present trusts, for the reason that under each trust petitioner has reserved the power to revoke or amend, under certain conditions, and thus repossess the corpus. It is petitioner's contention that section 166 does not apply because his right of revocation was subject to a contingency which had not yet happened and the happening of which was beyond his power to control. That contingency was the death of his father without exercise of a power of amendment granted the father, which might be used to destroy petitioner's right of revocation.

[1] Conference Report No. 1385, 73d Cong., 2d sess., at p. 24.

The court in *Kaplan* v. *Commissioner*, 66 Fed. (2d) 401, in construing section 219 (h) of the Revenue Act of 1924, said:

\* \* \* This provision was intended, as its legislative history clearly shows, as a protection to the government against evasion of income taxes, especially surtaxes, by means of trusts whereby the grantor, although parting with the legal control of the trust property, reserved a practical control over the income of it which could, in point of fact, be exercised for his own benefit. As Kaplan named himself trustee, the large discretion given in the trust instrument to the trustee as to the accumulation and payment of income is attributable to him personally. By the terms of the trust that discretion can be exercised for his own possible benefit, within wide limits. We see no occasion for refinement of construction against the government. We think the statute means that if under any circumstances or contingencies any part of the accumulated income might inure to the benefit of the grantor such portion of the income is taxable to him.

Section 166, here involved, and its companion section 167 of the Revenue Act of 1934,[2] were both enacted to prevent the avoidance of surtax through creation of trusts subject in some manner to the control of the grantor. They, as well as the similarly numbered sections of the 1928 and 1932 Acts, constitute a reenactment and extension of sections 219 (g) and (h) of the Acts of 1924 and 1926. In *Higgins* v. *White*, 18 Fed. Supp. 986, interpreting section 219 (g) of those Acts, after citing the *Kaplan* case, *supra*, with approval, and quoting, substantially, the above excerpt, Judge Brewster said:

\* \* \* The only essential difference between subparagraph (g) and subparagraph (h) of section 219 is that in the former the provisions relate to the grantor's control over the corpus of the trust, and in the latter over the income. This difference involves no distinction in principle.

The Board has already followed the reasoning in the *Kaplan* case in construing section 167 of the Revenue Act of 1934. Cf. *Fanny M. Dravo et al., Executors*, 34 B. T. A. 190. So, the respondent argues that since the same purpose prompted the original enactment and the quoted controlling amendment thereto in the Revenue Act of

---

[2] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o) relating to the so-called "charitable contribution" deduction) : then such part of the income of the trust shall be included in computing the net income of the grantor.

(b) As used in this section, the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question."

1934, the same reasoning should be used in our interpretation of section 166. See *Higgins* v. *White, supra.* Therefore, it is argued that there is no occasion for a refinement of construction here against the Government in construing the latter provision. Respondent thus urges that section 166 shall be applied in taxing to the grantor, petitioner, the income of the present trusts where, as here, he has reserved to himself, at the time and under the conditions heretofore detailed, a right of revocation, even though the exercise of such right be subject to a condition precedent over which the grantor has no control.

On this question we agree with respondent. Petitioner reserved to himself the power in the first trust, after his father's death and after 1932, later extended to 1937, to revoke and revest himself of the corpus. He retained the same power under the second trust, limited only by the death of his father.

Petitioner thus reserved the vested right to revest in himself the corpus of both trusts at *some time in the future.* The power to exercise this right, not its existence, during the tax year, was contingent. That contingency was the failure of the father to revoke that reserved right of the petitioner. Petitioner's father could have deprived petitioner of that reserved right. But nothing in this record indicates any probability of that happening. In fact, the converse is indicated by the father's amendments of the trusts.

At all events, the father has not divested petitioner of his vested right to revoke and thus revest the trust corpus in himself, specifically reserved in the trusts. And, until he is divested of that right, by the exercise of the power granted the father, petitioner stands vested with it. *Kinney* v. *Commissioner*, 80 Fed. (2d) 568, and cases cited therein. The circumstance that petitioner's right to revest the trust property in himself, was vested and not contingent—was more than "a mere possibility of reverter"—answers petitioner's attack on the constitutionality of our construction of section 166, *supra.* Cf. *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39; *Dort* v. *Helvering*, 69 Fed. (2d) 836; *Kaplan* v. *Commissioner, supra.* We conclude that the respondent was right in taxing the contested income of the present trusts to petitioner under the Revenue Act of 1934, section 166, *supra*, and that the quoted construing regulations are reasonable in so far as they apply to the facts in this proceeding. Cf. *Higgins* v. *White, supra; Fanny M. Dravo et al., Executors, supra.* This holding extends to the accumulated income composing "Fund A" under the second trust, since that fund consisted of income on the original trust corpus before it became corpus under the provisions of the trust authorizing its accumulation. It was, therefore, taxable as such income to the grantor, under the provisions of sec-

tion 166, *supra*, even though, possibly, by reason of the provisions of the trust agreement, after being accumulated and added to the corpus, it could not thereafter vest in the petitioner though it could be used, under certain conditions, as we read the trust instrument, in the payment of premiums on life insurance policies of the petitioner or for his other possible benefit. But, aside from the specific provisions of section 166 of the Revenue Act of 1934, *supra*, there is another and, we think, cogent ground supporting the respondent's contested action here. Under the rule adopted by some courts and this Board, if the two present trusts are of such character that petitioner, although transferring the legal title to a trustee, has retained in himself such general power of control and management that the trust property may be used for his own benefit to the extent that would give him the "substance of enjoyment", then the income of each trust is taxable to petitioner, either upon the theory that such trusts do not have separate taxable entities or they amount to no more than an assignment of income. *Claud McCauley*, 17 B. T. A. 886; affd., 44 Fed. (2d) 919; *Jacob Schneider et al., Executors*, 35 B. T. A. 183; *William C. Rands*, 34 B. T. A. 1107. See *Douglas* v. *Willcuts*, 296 U. S. 1. Let us consider whether, under these trusts, petitioner has reserved the substance of enjoyment to himself.

Under the first trust he reserved the power to remove the trustee and appoint a successor at will by mere written notice. So, at any time, he could have substituted himself as trustee and exercised the broad and unusual powers over the corpus granted the trustee, without liability. But, aside from this specific reservation indicating the mutual understanding between father and son that the son intended to retain the control of the corpus of the trusts, the father of the petitioner, by virtue of his power to amend, on August 8, 1933, executed an amendment providing not only that the income of the trust during the life of the petitioner should be accumulated and added to the corpus, but substituting the petitioner for the father as the party upon whose orders, alone, the trustee should act, without liability, in exercising the powers granted the trustee. This amendment was in effect throughout the tax year.

Thus, for the pertinent period, under either or both of those provisions, petitioner absolutely controlled the use of the trust corpus. He could sell or cause the sale of any or all of it to anybody on any terms or conditions. He could control the reinvestment of the proceeds of those sales in any manner. He could loan or cause the lending of any or all of the trust corpus to himself or anybody else on any terms and without security or liability or responsibility on his part or that of the trustee for the exercise of that power.

In the second trust instrument, petitioner similarly reserved the power to remove the trustee at will and substitute himself or another

as successor. The trustee was granted like inclusive and unusual discretion as to the trust property. Not only that, but in this document is found the provision that the trustee, upon such evidence as he might consider sufficient, could determine petitioner or his father to be incompetent to direct the management of the trust property and, in that event, such incompetent party would be considered, for the purposes of the trust instrument, as "dead." Under this provision, it would appear that petitioner, at any time, through his own action, alone, could substitute himself as trustee and remove his father from any power to direct the management of the trust property or amend or revoke the trust instrument.

These powers were supplemented, of course, by the reserved right to revoke which included the entire corpus and accumulated income of both trusts except, possibly, "Fund A", composing certain accumulated income of the second trust. But, assuming that possibility, petitioner could, subject to conditions (see *Fanny M. Dravo et al., Executors, supra*), control the distribution of that fund to others or use it for the payment of his own life insurance premium liabilities.

On this record, under the stated rule, we think the conclusion is inescapable that the contested income is taxable to petitioner. *Claud McCauley, supra; Jacob Schneider et al., Executors, supra; William C. Rands, supra.* See *Douglas v. Willcuts, supra,* and *Burnet v. Wells,* 289 U. S. 670.

Reviewed by the Board.

*Decision will be entered for the respondent.*

DISNEY concurs only in the result.