ESTATE OF A. C. O'LAUGHLIN, DECEASED, FIRST NATIONAL BANK OF CHICAGO AS EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 84319, 86966. Promulgated November 9, 1938.

*Elden McFarland, Esq.*, and *J. F. Riordan, Esq.*, for the petitioner. *Frank B. Schlosser, Esq.*, and *Arthur Clark, Esq.*, for the respondent.

1124

OPINION.

MURDOCK: The Commissioner has taxed the income of the six trusts to the grantor, the decedent in this case. The petitioner contends that no part of the income of the trusts is taxable to the decedent. It seems obvious that the income of the trusts for the year 1934 is taxable to the decedent under section 166 of the Revenue Act of 1934. That section is entitled "Revocable Trusts" and provides that "where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—(1) in the grantor * * * then the income of such part of the trust shall be included in computing the net income of the grantor." The decedent, the grantor, of these trusts, had the power to revest in himself title to all of the corpus of the trusts after the close of 1934. That is, he had the power to revoke the trusts after 1934, and upon revocation the corpus and the income of the trusts would revest in him. The situation falls squarely within the above quoted statutory provision. Cf. *Warren H. Corning*, 36 B. T. A. 301.

Section 166 of the Revenue Act of 1932 differs from section 166 of the Revenue Act of 1934 in that it relates only to trusts where the grantor has the power to revest title to a part of the corpus in himself "during the taxable year." The first issue as it relates to the years 1932 and 1933 must be decided under the provisions of the Revenue Act of 1932. Section 166 of that act does not apply, since the decedent did not have the power to revoke the trusts within either of the taxable years 1932 or 1933.

Sections 167 of the Revenue Acts of 1932 and 1934 are entitled "Income for Benefit of Grantor," and provide that there shall be included in computing the net income of the grantor such part of the income of the trust as "is, or in the discretion of the grantor or of

any person not having a subst[...]

of such part of the income may [adverse interest in the disposition] distribution to the grantor." The in[come] [or accumulated for future] not only could be but was accumulated[ of] [the trusts in question] the trusts up to the date of the decedent's d[eath] [very inception of] ments provided that the income could be accumu[lated] [the trust instru-] trustees directed the trustee to accumulate it. The a[dvisory] [the advisory] on January 15, 1932, about fifteen days after the creation [trustees] and before any income was ready for distribution, advised th[e] [trusts] to accumulate the income. That income was retained by the tru[st] until after the close of 1934, and thereafter the decedent, by revoking the trusts, could have had all of that income for his own. Section 167 applies unless the discretion to accumulate was in one having an interest adverse to that of the grantor. It is contended that John J. O'Laughlin, the brother of the decedent and one of the advisory trustees, had a substantial adverse interest in the disposition of the income of the trusts, since he was to receive one-seventh of the income of each trust. The trust instruments created by the decedent would indicate that John J. O'Laughlin had a substantial adverse interest to that of the decedent, at least in the disposition of one-seventh of the income of each trust. But there is other evidence which has a bearing on that point.

The parties were considering the tax consequences of their acts on December 31, 1931, and had advice of counsel in that connection. Six separate trusts instead of one trust were used, upon the advice of counsel. One reason for that decision might have been the expected saving in taxes. The trust instruments provided that John J. O'Laughlin should have a one-seventh interest in the income and corpus of each. A separate trust for him would have accomplished almost the same result, except for his "adverse interest" in all of the trusts. If there was any reason for the selection of the particular method used, other than an attempt to bring the trusts within the provisions of section 167, such other reason has not been disclosed in this record. Taxpayers are not to be penalized, of course, for selecting a method which results in less tax than might have been due under some other method. Nevertheless, the foregoing circumstances need not be disregarded in the decision of this case. Cf. *William C. Rands*, 34 B. T. A. 1107, 1115. Apparently the only function of the advisory trustees during the life of the grantor was to direct the trustee to accumulate the income. No reason appears for giving the advisory trustees authority to decide about accumulations except the purpose of avoiding the application of section 167. John J. O'Laughlin testified that he had no understanding or agreement with the decedent whereby he and his cousin Charles would direct

accumulation of the income from the decedent's trusts. However, the explanation given for the prompt direction to accumulate the income is not at all convincing. Furthermore, John J. O'Laughlin testified that the trusts which he and his cousin created at the same time that the decedent created the trusts here in question were drawn pursuant to the same general plan and were along the same general lines as those of the decedent. It may be that the decedent was a beneficiary and an advisory trustee in the John J. O'Laughlin trust. The conclusion might be drawn fairly from this entire record that the interest of John J. O'Laughlin in the distribution of the income from the trusts was not actually a substantial adverse interest when compared to that of the decedent. However, the respondent does not particularly press this point and the evidence in regard to the other trusts is not clear. For these reasons and for the further reason that there is another ground for the decision, it will not be rested upon the application of section 167.

There was little real substance to these trusts as they were worked out by the parties, and even if the trusts do not fall fairly within the provisions of section 167, nevertheless, the income of those trusts is taxable to the decedent on principles set forth in the following decisions of this Board: *Benjamin F. Wollman*, 31 B. T. A. 37; *William C. Rands, supra;* and *Warren H. Corning, supra.* The Board held in each of those cases that the income of a trust was taxable to the grantor because the trusts were lacking in substance and left in the grantor substantial rights and interests in the trust property as well as rather complete powers of control over and management of the trust property. The grantor could thus use the trust property in many ways for his own benefit and had the "substance of enjoyment" of it. The Government is not required to tax trusts as separate taxable entities where the terms of the trust instrument and the manner of conducting the trusts indicate that they are not entitled to be distinguished from the grantor for tax purposes. The control which the decedent in the present case had over the trust property was as great as, if not greater than, that enjoyed by the grantors in some, or all, of the above cited cases. He retained practically complete dominion and control over all of the property listed as trust property, including the income. It does not appear that he transferred any of the securities to his name as trustee. Although he could not distribute the trust income to himself under the terms of the trust instrument during the years 1932, 1933, and 1934, he managed, with the assistance of the advisory trustees, to keep that income intact during all of those years until he had a right to revoke the trust. He could get not only the income but also the corpus by revoking the trust. He died in December 1936, without ever having revoked the trust and without ever having distributed any of

the income of the trust. Thus during the years 1935 and 1936, up until the time of his death, he had the power to revoke the trusts and to take the accumulated income and principal thereof for his own. It is immaterial that he did not exercise this power. The important thing is that he had it. The three cases mentioned were cited and relied upon by the respondent in his brief. The petitioner has not even attempted to distinguish those cases. The Commissioner did not err in taxing to the decedent the income of the trusts for the years 1932, 1933, and 1934.

The sale of the bonds by the decedent to the corporation was bona fide and gave rise to the deductible losses claimed by the petitioner. The decedent was the most important officer of the corporation and owned a large minority of the stock of the corporation. Nevertheless, the disposition which he made of the bonds was complete, final, and for a fair consideration. He retained the note of the corporation which he received in payment for the bonds and he later used that note to purchase other bonds from the corporation, but there is nothing about those circumstances to justify the Commissioner's action in disallowing the losses.

*Decision will be entered under Rule 50.*