WILLIAM E. BOEING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88167.    Promulgated January 25, 1938.

*Elmer E. Todd, Esq.*, and *Lowell P. Mickelwait, Esq.*, for the petitioner.

*James C. Maddox, Esq.*, for the respondent.

182

OPINION.

ARUNDELL: The two issues are whether certain gains and losses from the sale of timber constitute gains and losses from the sale of capital assets as defined by the statute, and whether the income of the three trusts described in our findings of fact is taxable to the petitioner as grantor.

As to the first issue, the petitioner realized a gain of $5,906.25 during the taxable year from sales of timber pursuant to the contract with the Crescent Logging Co., and a loss of $1,004.41 from sales pursuant to the contract with the Greenwood Logging Co., and the question is whether these gains and losses resulted from the sale of "capital assets" within the statutory definition. (Sec. 117 (b), Revenue Act of 1934.) That definition is as follows:

(b) DEFINITION OF CAPITAL ASSETS.—For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

There is no question that "sales" of timber occurred as required by section 117 (a) of the same act, rather than mere "leases" as is the case in the disposition of oil where the land is retained. See *Burnet* v. *Harmel*, 287 U. S. 103; cf. *John W. Blodgett*, 13 B. T. A. 1388, and *J. J. Carroll*, 27 B. T. A. 65; affd., 70 Fed. (2d) 806. The controversy is limited to whether or not the timber sold constituted "stock in trade of the taxpayer" or "other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year", or "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." In any attempt to apply the descriptive clauses of the statute to the property here involved, it is plain that none of them apply. The timber was not stock in trade of the petitioner for he was not engaged in the trade or business of buying and selling timber. If timber can in any event be included in inventory, it could not be included in the inventory of this taxpayer inasmuch as he was not engaged in a business which permits the use of inventories for tax purposes. The timber was not held for sale to customers in the ordinary course of the taxpayer's trade or business. This clause connotes a business regularly carried on and property continuously held out for sale rather than as here—casual sales. Cf. *Phipps* v. *Commissioner*, 54 Fed. (2d) 469, and *Richards* v. *Commissioner*, 81 Fed. (2d) 369.

The record shows that during the taxable year the petitioner was not actively engaged in any trade or business as those terms are ordinarily understood. His chief business had formerly been aviation, but he had retired from business and was absent from the state almost the entire year. His business, if any, during the taxable year could be described only as management of his investments. So far as the record shows he had never been in the business of buying and selling timber or timber lands. The original tracts here involved had

been obtained by inheritance and tracts which were purchased later had been held along with the former for investment purposes since 1912. The sales here were not part of a business of buying and selling timber, but merely a liquidation of part of the petitioner's investments in timber. The timber was not held primarily for sale to the customers of any established trade or business of the petitioner's. There was no continuous course of dealing with a group of regular buyers which would be necessary to the conclusion that the timber was held for sale to customers in the ordinary course of trade or business. The sales of timber from the tracts of land here in question were isolated transactions by the petitioner, involving merely casual buyers, as distinguished from "customers."

The respondent's argument that the petitioner was engaged in the trade or business of buying and selling timber is based on the fact that the petitioner used employees, agents, or independent contractors in effectuating this liquidation of his investment. We do not think the respondent's conclusion can be predicated upon those facts alone. It is true that the petitioner engaged independent contractors, the logging companies, to put the timber in salable condition by cutting it and delivering it at tidewater, and that his employees or agents recorded and checked up on the performance of the contracts. But employees, agents, or brokers are often employed to effectuate a sale by one who is not in the regular business of buying and selling. Common examples are the retention of real estate agents or stockbrokers to sell property which has been held purely for investment. Even independent contractors, such as repairmen, are often employed to put investment property in salable condition, but that fact alone would not operate to put the seller into the trade or business of buying and selling such property. However, even if the utilization of the services of others in effectuating isolated transactions of sale could be said to require the conclusion that the owner of the property is engaged in trade or business, we are of the opinion that there was not in the case at bar any such regularity and continuity of dealing in the specific property as is required by the statutory provision invoked by the respondent. Such regularity and continuity of dealing are in our opinion necessary to the concept of sales to customers in the ordinary course of business which is embodied in the statute. For the foregoing reasons, we are of the opinion that the timber sold was not stock in trade, or property which should properly be inventoried, or property held primarily for sale to customers in the ordinary course of petitioner's trade or business. Since the property does not fall within the exceptions contained in section 101 (c) (8) quoted above, it constituted capital assets and its sale gave rise to capital gain under one contract and resulted in a capital loss under the other.

In cases relied on by the respondent, the corporations were not merely liquidating investments, but were engaged in the regular business of mining. *Stratton's Independence, Ltd.* v. *Howbert*, 231 U. S. 399; *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503. Cases in which sales of timber have been held to constitute sales of capital assets within the statutory definition are *John W. Blodgett, supra*, and *J. J. Carroll, supra*. Similar to the instant case, those were cases of sales of timber held for investment by persons not in the regular business of buying and selling timber. The fact that in those cases the timber was sold directly to loggers or to vendees who would themselves remove it does not, in view of what we have said above, serve to distinguish those cases in principal from the present one.

In regard to the second issue, arising from the respondent's determination that the income of the three trusts described in our findings is taxable to the petitioner, the deficiency notice states only that the trusts "come within the purview of trusts defined in sections 166 and 167 of the Revenue Act of 1934." On brief the respondent waives argument on this issue except to point out that in the W. E. Boeing, Jr., trust there is a possibility that the current income which is being accumulated for the benefit of W. E. Boeing, Jr., will be distributed to the petitioner along with the rest of the trust estate if W. E. Boeing, Jr., dies before he reaches 30 and the petitioner is himself alive at that time. Respondent argues that this places the trust income within the provisions of section 167 (a) (1) of the Revenue Act of 1934, which provides:

(a)  Where any part of the income of a trust—
(1) is,  *  *  *  held or accumulated for future distribution to the grantor;

*       *       *       *       *       *       *

then such part of the income of the trust shall be included in computing the net income of the grantor.

In our opinion this provision does not cover the case before us. We do not think that the language of this section covers or was intended to cover the situation where there is no definite provision for such future distribution to the grantor, but only the bare possibility that upon certain contingencies over which the grantor has no control the corpus and accumulations may revert to him. This is what has been called a mere "possibility of reverter" in the estate tax cases (*Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39; *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48), and we do not think that where such bare possibility exists the income of the trust may be said to be "held or accumulated *for* future distribution to the grantor", within the meaning of section 167. That section, being one which cuts across the usual concept of the separate entity of trusts, should not, we think, be given any broader interpretation than

its terms require (cf. *Preston R. Bassett*, 33 B. T. A. 182), and if article 167–1 of Regulations 86 purports to include in the scope of the statute such a trust as the one before us we think the regulation is an erroneous interpretation of the statute.

The argument just discussed could only apply to the W. E. Boeing, Jr., trust, since under the terms of the other two trusts there was not even a possibility of the accumulated income reverting to the grantor. Upon termination of those trusts upon any of the contingencies specified in the trust instruments, the distribution of the corpus and accumulated income was directed to go to others than the grantor.

In view of the blanket determination by the respondent that all three trusts fall within sections 166 and 167, it remains for us to point out that no power is retained under any of them to revest title in the grantor, wherefore section 166 does not apply, nor is there any provision for current or future distribution of the income to the grantor or for its application to the payment of premiums on insurance on his life, wherefore section 167 does not apply.

*Decision will be entered under Rule 50.*