BLANCHE G. PENN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90760.   Promulgated April 19, 1939.

*A. F. Schaetzle, Esq.*, for the petitioner.
*Hugh Brewster, Esq.*, for the respondent.

### OPINION.

MELLOTT: Respondent determined a deficiency in petitioner's income tax for the calendar year 1934 in the amount of $681.92. The sole issue is whether or not all or any part of the income of a trust created by petitioner is taxable to her either under the provisions of section 166 or 167 of the Revenue Act of 1934.

All of the facts have been stipulated. For the purposes of this decision they may be summarized as follows:

Petitioner is a resident of Des Moines, Iowa, and for the taxable year filed a Federal income tax return with the collector of internal revenue at Des Moines.

On August 27, 1932, the petitioner executed the following instrument:

### DEED OF TRUST.

KNOW ALL MEN BY THESE PRESENTS:

THAT, I, Mrs. Blanche Penn, of Chicago, Illinois, Settlor, do hereby assign, transfer and convey unto Mrs. Blanche Penn and Mrs. Bessie Reynolds of

Chicago, Illinois, as Co-trustees, or to their successor, the property described in Schedule "A" hereto attached and made a part hereof, to be held by said Co-trustees in trust for the uses and purposes herein set forth.

1. In disposing of the income and principal of this trust the Co-trustees' duties shall be:

(a) To deposit and keep the property of this trust at the Chicago office of Halsey, Stuart & Company for safekeeping only and receipts therefor shall be issued by said Halsey, Stuart & Company to the Co-trustees evidencing its receipt and possession thereof for safekeeping. This depository of said property may be changed by the Co-trustees only with the written approval of Albert Penn of Des Moines, Iowa.

(b) To apply the sum of $150.00 per month out of the income of the trust to the use of Mrs. Bessie Reynolds during her lifetime. For the purpose of meeting any contingency arising due to the fact that the income from investments should not provide sufficient funds to take care of the monthly payments of $150.00, a surplus cash fund of $500.00 shall be accumulated out of excess monthly interest income and maintained at all times with Halsey, Stuart & Company to obviate the necessity of drawing on the principal. Any income in excess of the $150.00 per month, and the surplus cash fund, both above mentioned, shall be allowed to accumulate and when the excess amounts to the sum of $1,000.00, the Co-trustees shall reinvest said sums in securities, which must be approved in writing by Albert Penn.

(c) The securities making up the corpus of this trust may be changed by the Co-trustees but only with the written approval of Albert Penn.

(d) When securities are purchased at a premium by the Trustees or Trustee, it shall not amortize such premiums, but the current income received from such securities shall be credited entirely to the income account, and any depreciation to the trust estate on account of the sale or maturity of such securities purchased at a premium shall be charged to and borne by the principal of the trust estate, and likewise where securities are purchased by the Trustees or Trustee at a discount, all current income arising from such securities shall be credited entirely to the income account, and any increase or appreciation to the trust estate on account of the sale or maturity of such securities so purchased at a discount shall be added to and become a part of the principal of the trust estate.

(e) Upon the death of Mrs. Blanche Penn or Albert Penn, or if Albert Penn desires to be relieved of the responsibility of approving the additional and/or change in investments, or in the event of Mrs. Blanche Penn's inability to act as trustee, before the terms of the trust are fully carried out, then the property in this trust and any replacements thereof or additions thereto, shall pass to a successor trustee, and the Northern Trust Company of Chicago, Illinois, is hereby nominated as such successor trustee. The duties of such successor trustee shall be:

(1) To retain property coming into its hands in the same form as received by it and to invest and reinvest the same and the proceeds therefrom or from any part thereof in corporation, railroad, public service corporation, municipal or government bonds, mortgages or other securities, and to sell, alter or change the investments thereof until the final and complete distribution of the trust estate as hereinafter provided, without being in anywise restricted by any present or future laws governing the investment or administration of trust funds.

(2) To pay to Mrs. Bessie Reynolds the sum of $150.00 per month during her lifetime out of the income of the trust. Any income in excess of said

$150.00, and the surplus fund, both hereinbefore mentioned, shall be allowed to accumulate and when this sum accrues to the sum of $1,000.00, a successor trustee shall reinvest said amount in securities, which it, in its discretion, deems a wholesome investment.

(f) This trust shall terminate upon the death of Mrs. Bessie Reynolds, at which time the property of the trust shall revert to Mrs. Blanche Penn, if then living, and if deceased to her heirs at law or to those whom she may designate in her will.

(3) I hereby reserve the right by an instrument in writing delivered to the Co-trustees to modify, alter and amend this instrument, provided, however, that the duties and responsibilities of the Co-trustees shall not be substantially increased without their written consent and provided that no such modification, alteration or amendment shall in any way or to any extent revoke or change the beneficial interest established hereunder or the enjoyment thereof.

(4) This trust shall take effect September 1, 1932, if accepted by the Co-trustees and in all respects shall be governed by the laws of the State of Illinois, except as under such provisions as are otherwise clearly defined.

By amendment to the deed of trust dated September 18, 1934, the depository for the securities was changed from Halsey, Stuart & Co. to the Iowa Des Moines National Bank & Trust Co. of Des Moines, Iowa.

The deed of trust and the amendment were duly carried out in accordance with their terms.

During the calendar year 1934, and prior to October 1 of that year, Halsey, Stuart & Co. collected interest in the amount of $1,708.75 on the securities contained in the trusteeship. Of this amount $1,508.75 represented interest subject to Federal income tax and $200 represented interest on municipal securities which were exempt from Federal income tax. Halsey, Stuart & Co. disbursed the sum of $150 per month for the nine months from January to September 1934, which was applied to the use and benefit of Bessie Reynolds, in accordance with the terms of the trust instrument.

For the balance of the year 1934, i. e., the period from October 1 to December 31, the Iowa Des Moines National Bank & Trust Co. collected interest on the securities turned over to it by Halsey, Stuart & Co. in the aggregate amount of $463.84 and disbursed the sum of $450, during this period, for the use and benefit of Bessie Reynolds. Of the total interest received by the Iowa Des Moines National Bank & Trust Co. the sum of $351.16 represented interest subject to Federal income tax and the sum of $112.68 represented interest on municipal securities which was exempt from such tax.

The receipts and disbursements may be summarized as follows:

*Receipts:*

| | |
|---|---|
| Interest wholely taxable | $244.91 |
| Interest on which 2% was paid at source | 1,615.00 |
| Interest exempt from all Federal income tax | 312.68 |
| Gross income of trust | 2,172.59 |

*Disbursements:*

Amounts paid to Bessie Reynolds at the rate of $150
per month per terms of the trust_____ $1, 800. 00
Copy of photostatic copy_____    1. 22
                                                    ——————— $1, 801. 22

Balance of income_____   371. 37

A capital loss in the sum of $1,209.43, not taken into account in the foregoing statement of receipts and disbursements, was suffered by the trust upon sale of securities. The parties have stipulated that this loss is limited to the sum of $553.57 under the capital gains and loss percentages provided in the Revenue Act of 1934.

Respondent added the sum of $1,859.91 to the taxable income reported by petitioner on her return for the year 1934. No deduction has been allowed to the petitioner with respect to the capital loss suffered by the trust upon the sale of securities.

Petitioner contends that none of the income from the trust herein referred to is taxable to her. Respondent contends that all or some part of the income is taxable to her under the provisions of either section 166 or 167 of the Revenue Act of 1934.

Respondent's first contention is that the income realized by the trust is taxable to the petitioner under section 166 of the Revenue Act of 1934 and article 166—1 of Regulations 86, as amended by T. D. 4629, XV-1 C. B. 140 (1936), (a) because of the reversionary interest retained by her and (b) because she remained in substance the owner of the corpus. Section 166 of the Revenue Act of 1934 provides:

SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor.

Article 166—1 of Regulations 86, as amended, construes this section as follows:

ART. 166–1. *Trusts, with respect to the corpus of which, the grantor is regarded as remaining in substance the owner.—*

\*       \*       \*       \*       \*       \*       \*       \*

(b) Section 166 defines with particularity instances in which the grantor is regarded as in substance the owner of the corpus by reason of the fact that he has retained power to revest the corpus in himself. For the purposes of this article the grantor is deemed to have retained such power, if he, or any person not having a substantial interest in the corpus or the income therefrom adverse to the grantor, or both, may cause the title to the corpus to revest

in the grantor. If the title to the corpus will revest in the grantor upon the exercise of such power, the income of the trust is attributed and taxable to the grantor regardless of—

(1) whether such power or ability to retake the trust corpus to the grantor's own use is effected by means of a power to revoke, to terminate, to alter or amend or to appoint;

(2) whether the exercise of such power is conditioned on the precedent giving of notice, or on the elapsing of a period of years, or on the happening of a specified event;

(3) the time at which the title to the corpus will revest in the grantor in possession and enjoyment, whether such time is within the taxable year or not, or whether such time be fixed, determinable, or certain to come;

(4) whether the power to revest in the grantor title to the corpus is in the grantor, or in any person not having a substantial interest in the corpus or income therefrom adverse to the grantor, or in both. A bare legal interest, such as that of a trustee, is never substantial and never adverse;

(5) when the trust was created.

In support of his contention that the income of the trust here involved should be included in petitioner's taxable income because of the reversionary interest retained by her, respondent relies on *Warren H. Corning*, 36 B. T. A. 301 (on appeal, C. C. A., 6th Cir.). In that case the settlor of two trusts reserved to himself the power, after his father's death, to revoke or amend the trusts and revest himself of the corpus. Our holding that, because of the retention of such power, the income of the trusts was taxable to the settlor, does not justify the respondent's position that a settlor retaining a reversionary interest is in the same category. Section 166 provides that before the income of a trust can be taxed to the grantor there must be a "power to revest" in him title to some part of the corpus of the trust. Article 166—1 also refers to a power to revest. This Board has held that a reversionary interest or a possibility of reverter is not a power to revest within the meaning of this section. *William E. Boeing*, 37 B. T. A. 178 (on appeal, C. C. A., 9th Cir.), and *John Edward Rovensky*, 37 B. T. A. 702.

In support of his contention that the income of the trust should be taxed to petitioner because she remained in substance the owner of the corpus, respondent cites and relies upon *Estate of A. C. O'Laughlin*, 38 B. T. A. 1120; *Benjamin F. Wollman*, 31 B. T. A. 37; *William C. Rands*, 34 B. T. A. 1107; and *George B. Clifford*, Docket No. 89054, an unreported memorandum opinion of this Board entered September 26, 1938. In the cited cases this Board held that the income of certain trusts should be taxed to the settlors because they retained such control and enjoyment of the corpus of the trusts that they remained in substance the owners of the corpus after the execution of the trust instruments. In these cases the settlor named himself as trustee, provided in substance that the securities remain in his name and in his possession; and that he should have the right to sell any property constituting the corpus and reinvest the pro-

ceeds without restriction; to accumulate the income and invest it as if these funds were owned by him; to determine what is income and what principal; and in the case of stock to exercise voting powers and appoint proxies. In the instant case petitioner did not name herself as sole trustee; did not keep the trust corpus in her possession; and could not change the securities constituting the trust corpus without the consent of her cotrustee, the beneficiary, and Albert Penn, her husband. She did, however, reserve the right to modify, alter, and amend the trust instrument, but provided that no such modification, alteration, or amendment should revoke or change the interest of the beneficiary or its enjoyment. In our opinion petitioner did not have the broad and extensive powers over the trust corpus which were retained by the petitioners in the cases relied upon by the respondent, and was not in substance the owner of the corpus after the provisions of the trust instrument were executed.

While the contentions of the respondent that the income of the trust is taxable to her because of the reversionary interest retained or because she was in substance the owner of the corpus are not sound and can not be approved, the income of the trust, if any, in excess of $1,800 per annum is taxable to the petitioner. Section 167 (a) (1) of the Revenue Act of 1934 provides that, where any part of the income of a trust is held or accumulated for future distribution to the grantor, then such part of the income of the trust shall be included in computing the net income of the grantor. Petitioner on brief concedes that any income of the trust in excess of $1,800 per annum is taxable to her under the provisions of section 167 (a) (1), *supra*. She contends, however, that, before there could be any accumulation of income for her, as grantor, capital gains would have to be added to, and capital losses deducted from, the income of the trust, and that when this was done there was no income during the taxable year which could be accumulated for her benefit. The stipulated facts disclose that the income of the trust for 1934, without regard to capital gains and losses, was $2,172.59, and that $1,800 of this amount was distributed to the beneficiary and $1.22 spent for a photostat, leaving $371.37 to be accumulated for the benefit of the grantor if capital losses are not considered. The stipulated facts disclose that during the taxable year the trust sold certain securities and sustained a capital loss of $553.57. We agree with petitioner that such a loss must be deducted from other trust income not distributed to the beneficiary in determining what income, if any, could be accumulated for the benefit of the grantor. Inasmuch as the capital loss of $553.57 exceeded the $371.37 ordinary income not distributed to the beneficiary, it is our conclusion that no part of the income of the trust for the year 1934 is taxable to petitioner.

*Judgment will be entered for the petitioner.*