32

## Mary W. Pingree, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 104858.   Promulgated September 5, 1941.

*Earle W. Carr*, *Esq.*, for the petitioner.
*James J. Haslam*, *Esq.*, for the respondent.

**OPINION.**

MURDOCK: The principal issue is whether that portion of the trust income from one-half of the corpus payable to the mother during her life is taxable to the petitioner. The petitioner has reported the income from the other one-half of the corpus which was payable to her.

When the death of the mother terminates her life estate, the petitioner, if living, will receive and be taxable with the income from the entire corpus. The contention of the petitioner on this point is merely that the income payable to her mother during 1936 and 1937 is not taxable to the petitioner. The situation is not materially different from the simple case of a trust for the life of the mother. Indeed, the division of the corpus into two separate parts, the one to benefit the mother for life, may have resulted in two separate trusts. Cf. *William B. Mc-Ilvaine et al., Trustees*, 29 B. T. A. 304; affd., 78 Fed. (2d) 787; 296 U. S. 488; *Lynchburg Trust & Savings Bank* v. *Commissioner*, 68 Fed. (2d) 356; certiorari denied, 292 U. S. 640. Income of a trust currently distributable is ordinarily taxable to the life beneficiary, regardless of how the corpus may be used or distributed after the termination of the life estate. Sec. 162(b), Revenue Act of 1936.

The Commissioner has shifted from one ground to another without ever advancing any sound basis for taxing to the petitioner the income from the trust payable to her mother for life. He cites no authority for the tentative position taken in the notice of deficiency that the income from the life trust for the mother is taxable to the petitioner because she retained the power to appoint by will the persons to whom the trust corpus would go after the life estate in the mother had terminated with her death. Decision of this part of the case is not dependent upon what may happen to the corpus after the death of the mother terminates her life estate. The question is, Why should the income payable to the mother during her life be taxable to the petitioner? Had the petitioner created a simple separate trust for her mother for life, the income would not have been taxable to the petitioner even though she had thus retained full power to deal with the corpus after it had served the purpose of the trust. Cf. *Helvering* v. *Wood*, 309 U. S. 344; *J. Edward Johnston*, 41 B. T. A. 550, and cases cited therein. Here, where she retained less control over the corpus, there is certainly no greater reason to tax her on the income of the trust payable to her mother. *Lady Marian Bateman*, 43 B. T. A. 69. Cf. *Sarah A. W. Coursey*, 33 B. T. A. 1068.

The Commissioner, in his brief, no longer relies directly upon the ground advanced in the notice of deficiency. He makes several arguments, one of which is that the retained power to withdraw $1,000,000 from the trust corpus was a power of revocation within the meaning of section 166. This trust was irrevocable except as to the $1,000,000, which was less than one-fourth of the total corpus. Income taxable to a grantor under section 166 is limited to "the income from such part of the trust" as the grantor can revest in himself without the consent of any person having an adverse interest in that part of the corpus "or the income therefrom." The interest

of the mother was clearly adverse and her consent was required for the withdrawal of any funds. Thus, not even the income from the $500,000 subject to withdrawal from this one-half of the trust could be taxed to the petitioner under section 166. The possibility that the death of the mother would permit the petitioner to freely withdraw the $1,000,000 is immaterial, since the mother's life estate would also terminate with her death. Furthermore, see *Marrs McLean*, 41 B. T. A. 565; affd., 120 Fed. (2d) 942; *Henry A. B. Dunning*, 41 B. T. A. 1101; reversed, 118 Fed. (2d) 341, and cases there cited. Since the 1936 and 1937 income was distributable to the mother, it was not distributable to or held for the petitioner and section 167 could have no possible application. The cases of *Altmaier* v. *Commissioner*, 116 Fed. (2d) 162, and *Graff* v. *Commissioner*, 117 Fed. (2d) 247, cited by the Commissioner, dealing with accumulated income, are not in point.

The respondent, apparently, now places his chief reliance upon section 22 (a), claiming that the trust was for a short term, was controlled by the petitioner, was a mere assignment of income from property which the petitioner continued to own. The trustees were appointed for life and were in full control. The petitioner was not a trustee. The trust effected a very substantial disposition of the trust property and was not a mere assignment of income. The cases of *Helvering* v. *Horst*, 311 U. S. 112, and *Harrison* v. *Schaffner*, 312 U. S. 579, involving the assignment of income, are not in point. The respondent points to the advanced age of the life beneficiary in 1941 to show that the trust was like a short term trust. All trusts would eventually become short term trusts upon such a theory. The trust, as it benefited the mother, was created in 1922, was still in effect in 1941, and was to remain in effect so long as she should live. Although she was 78 in 1936 and 83 in 1941, she was but 64 in 1922, when the trust was created to benefit her for life. This case is unlike *Helvering* v. *Clifford*, 309 U. S. 331, relied upon by the respondent. The income distributable to the mother was not taxable to the petitioner.

The Commissioner mentioned as an alternative, in the notice of deficiency, that capital gains realized by the trust and accumulated would be taxable to the petitioner under section 167 because of her reserved power of appointment. The position has been abandoned, apparently, since it is not urged in the respondent's briefs. Amounts thus accumulated were never to be distributed to the petitioner and, consequently, section 167 has no application. The respondent in his brief makes the new argument that the accumulations are taxable to the petitioner under section 167 because of her power to withdraw them as a part of the $1,000,000, and, also, that the income from $500,000 is taxable to her under section 166 because of her right to withdraw that amount from the corpus of the mother's life trust.

He cites no authority supporting these contentions. The facts show that there is no merit in them. They are made upon the theory that the mother had no interest adverse to the withdrawal of the $1,000,000. The interest of the mother was adverse to the withdrawal of any part of the $1,000,000, since one-half of it would have to come from the corpus supplying her income. Thus, as has been stated, section 166 has no application to the income from $500,000. The accumulations were never to be distributed to the petitioner except as she might withdraw them as a part of the $1,000,000. Since the mother had an interest adverse to such withdrawal and her consent was necessary to any withdrawal, the capital gains were not taxable to the petitioner under this theory.

The Commissioner makes in his brief another argument never theretofore advanced. He says that one-half of the capital gains are taxable to the petitioner under section 167 (a) (2) because it was within the discretion of the trustee to treat those gains as income and distribute them. He assumes that one-half of the gains were from that part of the corpus set aside for the petitioner and thus could have been distributed to her. The trust deed gives the trustees power to decide what is income and what is principal. They determined that the capital gains were principal and not distributable as income, which was in accordance with the law of Massachusetts. *Theodore B. Plunkett*, 41 B. T. A. 700; affd., 118 Fed. (2d) 644. The Board has held that the local law is not controlling and section 167 (a) (2) applies where capital gains are subject to such a discretion in trustees. *Malcolm W. Greenough*, 29 B. T. A. 315; *H. Cecil Sharp*, 42 B. T. A. 336; *Georgia B. Lonsdale*, 42 B. T. A. 847. But the Circuit Court of Appeals for the First Circuit, to which this case could go on appeal, has gone both ways on this point. It affirmed the *Greenough* case, 74 Fed. (2d) 25, and recently, in *Commissioner* v. *O'Keeffe*, 118 Fed. (2d) 639, seems to have taken the opposite view. We are not going to decide the question here because it has not been fairly and properly raised either by the pleadings or the facts in the record. The Commissioner should have pleaded this issue, and since he failed to do so, we need not decide it. If all of the gains were on the property in the mother's one-half of the trust, the issue is not present. Regardless of who had the burden of proof, we may not assume that the petitioner, had she known any such issue was involved, would not have produced proof that none or less than one-half of the capital gains came from her one-half of the corpus.

The petitioner was not taxable on any income of the trust, so far as this record shows, except that which was actually distributed to her and about which there is no dispute. The petitioner states that the other issues need not be decided once the above decision is reached. That seems to be correct. The respondent expresses no disagreement.

The other issues are whether the trust is entitled to deduct as expenses of a business under section 23 (a) trustees' commissions and other expenses which in fact were paid. Allowance or disallowance of these items would not change the amount distributable and taxable to the petitioner if the trust is not to be disregarded.

*Decision will be entered under Rule 50.*