ESTATE OF ELLIE G. CANFIELD, DECEASED, KARL B. SMITH, JR., ADMINISTRATOR, C.T.A., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 69587, 69588.   Filed September 15, 1960.

*Ewing Everett, Esq.,* and *Stanley M. Moffat, Esq.,* for the petitioner.

*Ellyne E. Strickland, Esq., Samuel B. Sterrett, Esq.,* and *Jules W. Breslow, Esq.,* for the respondent.

OPINION.

DRENNEN, *Judge:* Respondent determined a deficiency in gift tax liability of Ellie G. Canfield, deceased, for the year 1942 in the amount of $35,293.58, and a net estate tax deficiency against her estate in the amount of $117,153.13.

The issues for decision are: (1) Whether the release of a reserved testamentary general power of appointment by decedent in 1942 constituted a taxable gift of the remainder value of the trust corpus at the time of such relinquishment, or was exempt from gift tax under section 1000(e), I.R.C. 1939; and (2) whether the corpus of the trust created by the decedent in 1919, wherein she reserved the income for life and a general testamentary power of appointment over the corpus, which power was released in 1942, is includible in her gross estate under section 2036(a), I.R.C. 1954, or excludible under section 2036(b) as a transfer made prior to March 4, 1931.

All of the facts were stipulated and are incorporated herein by reference. The facts may be summarized as follows.

Ellie G. Canfield, deceased, herein referred to as decedent, was born on August 2, 1863, and died on January 24, 1955. At the time of her death and at all other times material to this case she was domiciled in and a resident of the State of New York.

Decedent's husband, Francis D. Canfield, died on October 8, 1917. Decedent never remarried.

On March 24, 1919, decedent, as grantor, and the Central Union Trust Company of New York and decedent, as trustees, executed a trust agreement whereby decedent transferred to the trustees certain securities described in a schedule attached to the trust instrument. The first clause of the trust instrument directed the trustee to invest and reinvest all corpus of the trust and to pay the income, after deducting proper charges incident to the execution of the trust, to decedent during her life.

The second clause of the trust instrument gave to decedent a testamentary power of appointment of the corpus of the trust as follows:

Upon the death of the party of the first part, to pay over the whole of the said trust fund to, or to hold the same in trust and for the benefit of, such person or persons and in such proportions and shares and upon such terms as the party of the first part, by her Last Will and Testament in writing, shall have appointed and directed.

The third through the eighth clauses of the trust instrument provided for the disposition of the trust estate at decedent's death in the event she failed to exercise the power of appointment in her will. Generally, they provided for distribution of one-half of the trust estate outright to decedent's children surviving her and the

issue of any deceased child, per stirpes, with the other one-half to be held in trust for the same beneficiaries during the lives of decedent's children surviving her. In the event decedent died without issue the trust estate was to be distributed to her brother and his issue.

With the exception of the reserved testamentary power of appointment the instrument contained no provision authorizing or permitting decedent to alter or amend its terms in any manner and no provision authorized decedent or any other person to remove the trustees. The trust provided that upon the resignation, removal, or incapacity of the trustees, the beneficiaries at such time had the right to nominate and appoint a successor trustee.

On December 15, 1942, decedent executed and delivered to the Central Hanover Bank and Trust Company, a New York corporation, which was the corporate successor trustee to the Central Union Trust Company of New York, a written release of the testamentary power of appointment. The release provided that decedent irrevocably released, surrendered, and renounced the power of appointment granted to her under the aforesaid trust deed of March 24, 1919, including "all of my right, title and interest whatsoever in said power of appointment."

The executors filed an estate tax return for the estate of Ellie G. Canfield on January 10, 1956, with the district director of internal revenue for the Upper Manhattan District of New York, and a gift tax return for the deceased for the year 1942 on July 20, 1956.

It is stipulated that if State law is applicable in any respect in these cases, such State law is that of New York.

In his notice of deficiency in gift tax liability respondent determined that decedent made a gift on December 15, 1942, "of the remainder value of the trust corpus as of that date when she released her general testamentary power of appointment under the trust created by her on March 24, 1919." In his notice of deficiency in estate tax liability respondent determined that—

the corpus of the trust created by the decedent on March 24, 1919, reserving the income for her life and a general testamentary power of appointment, which power of appointment was released on December 15, 1942, forms a part of decedent's gross estate within the provisions of section 2036 of the Internal Revenue Code of 1954.

The first issue is whether the release by decedent of a reserved testamentary power of appointment in 1942 constituted a taxable gift of the remainder value of the trust corpus at the time of relinquishment. Petitioner concedes that the release of the testamentary power of appointment would constitute a taxable gift were it not for the special relief provision contained in section 1000(e), I.R.C. 1939.

Section 1000(e) provides that in the case of a trust created before January 1, 1939, where, on and after January 1, 1939, *"no power to revest title to such property in the grantor* could be exercised either by the grantor alone, or by the grantor in conjunction with any other person not having a substantial adverse interest in the disposition of such property or the income therefrom," (emphasis supplied) then the relinquishment on or after January 1, 1940, and on or before December 31, 1947, of a power or control with respect to the distribution of the trust property will not be deemed a taxable gift.

Respondent contends that decedent's relinquishment of the testamentary power of appointment in 1942 is not exempt from gift tax under section 1000(e) because decedent had retained, up until such relinquishment, sufficient control over the disposition of the trust property as to cause the gift to be revocable and incomplete. Respondent concedes that the trust was irrevocable when created in 1919 under New York law. See *William B. Armstrong*, 32 B.T.A. 1261; *Matter of Ryan*, 309 N.Y. 703, 128 N.E. 2d 414 (1955); *Richardson* v. *Richardson*, 298 N.Y. 135, 81 N.E. 2d 54 (1948).

Although the trust was irrevocable, respondent argues that decedent's gift of the remainder interest was not irrevocable because the trust instrument did not preclude her from using the testamentary power of appointment in favor of her estate or her creditors. Thus, it is urged, the gift was not irrevocably beyond the reach of the settlor.

The difficulty with respondent's argument is that the precise language of section 1000(e) refers to a "power to revest title to such property in the *grantor.*" (Emphasis supplied.) The meaning of this phrase would appear to be the power of a grantor to regain title to the property during his lifetime. This the decedent concededly had no power to do. Assuming the decedent had wished to revoke the gifts made in the trust instrument and by will appoint her estate to take the trust corpus, she nevertheless could not regain the trust corpus during her lifetime under New York law without the written consent of all persons beneficially interested in the trust. Such persons beneficially interested would be all those living who had been designated in the trust instrument to take a portion of the trust corpus upon her death. *William B. Armstrong, supra; Richardson* v. *Richardson, supra.* The existence of an unexecuted power of appointment does not prevent the vesting of a future estate under New York law. Estates in remainder which are limited to take effect upon default in the exercise of a power of appointment are not prevented from vesting by the existence of the power, but take effect in the same manner as if no power existed. See

N.Y. Real Prop. Law, art. 3, sec. 41, and the cases cited in 49 N.Y. Consol. Laws Ann., pt. 1 (McKinney); also, *William Korn et al., Executors*, 35 B.T.A. 1071. Thus, the decedent could not revest title in the trust corpus in herself without the written consent of all those designated to take a remainder interest, such persons clearly having a substantial adverse interest. See N.Y. Pers. Prop. Law, art. 2, sec. 23.

That the "power to revest title * * * in the grantor" does not refer to a testamentary power of appointment retained by the grantor is also indicated by reference to section 166, I.R.C. 1939, and similar sections in prior revenue acts which provide that income of a trust is taxable to the grantor where there is "the power to revest in the grantor title to any part of the corpus of the trust."[1] In *Lady Marian Bateman*, 43 B.T.A. 69, affd. 127 F. 2d 266 (C.A. 1, 1942), where the grantor retained a testamentary power of appointment, we stated:

> The trust deed provides that petitioner can not secure title to the corpus or any part thereof *during* her life. Even if she exercised the power in favor of her estate after the creation of the trust and failed to revoke that act, *she could never, herself, acquire the trust estate.* Such action would merely create a remainder interest in her heirs. A reversionary interest in the grantor has been held not to constitute a power to revest the corpus in the grantor under section 166. *Blanche G. Penn*, 39 B.T.A. 787; *William E. Boeing*, 37 B.T.A. 178; reversed on another point, 106 Fed. (2d) 305; certiorari denied, 308 U.S. 619; *John Edward Rovensky*, 37 B.T.A. 702; *Helvering* v. *Wood*, 309 U.S. 344. A fortiori, a remainder interest enjoyable only by the grantor's heirs would not come within that section. [Emphasis supplied.]

To the same effect are *William B. Armstrong, supra; Mary W. Pingree*, 45 B.T.A. 32.

Respondent argues that section 1000(e) was enacted only to prevent a second tax on the release of a power of appointment where the original gift had been made at a time when a gift tax law was effective and the original gift had been treated as complete for gift tax purposes; therefore section 1000(e) does not apply to the release of a power of appointment retained in connection with a gift made prior to the enactment of the gift tax laws. We find no support for this argument in either the language of section 1000(e) or its legislative history. See S. Rept. No. 627, 78th Cong., 1st Sess., p. 92.

Respondent also contends that section 1000(e), having been enacted to prevent inequities arising out of *Estate of Sanford* v. *Commissioner*, 308 U.S. 39, applies only to the release of powers of the type involved in the *Sanford* case, that the power reserved by de-

---

[1] The original House version of section 1000(e) (see H. Rept. No. 3687, 78th Cong., 1st Sess., sec. 502) referred specifically to section 166.

cedent here was broader than the "Sanford power," and consequently there can be no release of such a power here to which section 1000(e) could apply. The statutory language makes no such distinction and, furthermore, we cannot agree with respondent that the power released by decedent here was any broader than the power involved in the *Sanford* case.

In *Sanford* the power reserved by the donor, the release of which was held to be a transfer by gift, was "the right to modify any or all of the trusts" provided that this right "shall in no way be deemed or construed to include any right or privilege" in the donor "to withdraw principal or income from any trust." Such reserved right would have permitted the donor, either inter vivos or at death, to do anything decedent here could have done under the power reserved in the trust here involved. Furthermore, if the purpose of Congress in enacting section 1000(e) was to permit the release of *Sanford*-type powers tax free within a certain period, it would seem that the qualification to this right (being that subsequent to January 1, 1939, the grantor had no power to revest title in himself) was intended to mean the same as the limitation placed on the right reserved in the *Sanford* case (being the right to withdraw principal or income from the trust); and it is reasonable to assume that the qualifying language used in section 1000(e) was intended to mean a right exercisable by the grantor during his life for his own benefit.

Since decedent held no power on or after January 1, 1939, to revest title to the trust corpus in herself, either alone or in conjunction with a person having no substantial adverse interest in the disposition of the corpus, we hold that section 1000(e) applies, and the relinquishment by decedent of the testamentary power of appointment in 1942 is not subject to gift tax.[2]

The second issue is whether the corpus of the trust is includible in decedent's gross estate. Petitioner concedes that it would be includible under section 2036(a), I.R.C. 1954 [3] except for the relief

---

[2] The only cases involving section 1000(e) which have been called to our attention are *Supplee* v. *Smith*, 242 F. 2d 855 (C.A. 3, 1957), and *Peters* v. *Alsup*, 95 F. Supp. 684 (D. Hawaii, 1951), which are of little help because in each of those cases the Commissioner appears to have conceded the applicability of section 1000(e) to the release of reserved powers somewhat similar to the power involved here.

[3] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

provision contained in section 2036(b).[4]  Section 2036(a) provides for the inclusion in the decedent's gross estate of the value of property of which decedent has made a transfer while retaining the income for life.  Section 2036(b) provides that section 2036(a) shall not apply to a transfer made before March 4, 1931.

Petitioner contends that the "transfer" referred to in section 2036(b) was the original transfer of the property in trust in 1919 and therefore section 2036(a) is not applicable because the transfer was made before March 4, 1931.  Respondent argues that section 2036(b) applies only to irrevocable transfers made prior to March 4, 1931; that decedent's transfer in trust in 1919 was not truly irrevocable because of the retention of a general testamentary power of appointment; that the transfer did not become irrevocable until decedent released the power of appointment in 1942; and that the release of the power was a "transfer" within the meaning of section 2036(a) which was made after March 4, 1931, so that section 2036(a) is applicable.  Respondent cites *Smith* v. *United States*, 139 F. Supp. 305 (Ct. Cl., 1956), in support thereof.

This same argument, under similar factual circumstances, has been presented to this Court by the Commissioner twice since the Court of Claims decision in the *Smith* case.  In *Estate of Robert J. Cuddihy*, 32 T.C. 1171, decedent and his wife set up reciprocal trusts in 1926, granting to each other one-half the income of their respective trusts for life, the other one-half to be paid to decedent's issue, with remainder over to decedent's issue.  The trusts were to continue until the death of two designated grandchildren, but were terminable in favor of decedent's issue by the trustees with the consent of a majority in interest of the income beneficiaries.  Decedent and his wife resigned as trustees in 1941, decedent's wife died in 1944, and in 1946 decedent released his right to consent to the termination of the trust created by his wife.  On February 7, 1949, decedent waived any rights he might have in the corpus of either trust, and on April 8, 1949, he released his right to receive income from the trust established by his wife in exchange for a cash consideration paid to him by his children.  Realigning these trusts under the doctrine of *Lehman* v. *Commissioner*, 109 F. 2d 99 (C.A. 2, 1940), affirming 39 B.T.A. 17, certiorari denied 310 U.S. 637, decedent was regarded as the settlor of his wife's trust and as having transferred property in trust in 1926 while retaining one-half the income therefrom for life plus the power to terminate in favor

---

[4] SEC. 2036(b).  LIMITATION ON APPLICATION OF GENERAL RULE.—This section shall not apply to a transfer made before March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

of his issue with the consent of a majority of the income beneficiaries, which power was released in 1946. Respondent argued that the release of decedent's power in 1946 constituted the "transfer" which placed the value of the trust in decedent's estate under section 811(c)(1)(B) of the 1939 code. After analyzing the statute, the legislative history, and case law we held that the transfer to which the exemption provision refers is the transfer of legal title to the trust upon creation of the trust, which occurred in 1926.

In *Estate of Ellis Branson Ridgway*, 33 T.C. 1000, on appeal (C.A. 3), decedent, who died in 1953, had conveyed property in trust in 1930, with the income payable to his wife for her life and upon her death to decedent, if then living, for his life. Upon the death of both decedent and his wife, the trust income was payable to decedent's two sons for life, and each son was given a testamentary general power of appointment over one-half of the principal of the trust. Under the terms of the deed of trust, decedent reserved the right at any time to change the limitations contained therein with respect to the distributions of principal and income of the trust fund, provided no such appointment of principal should be made in favor of decedent or his estate. The trust was irrevocable in all other respects. In 1944 decedent released the power to make any change with respect to distribution of principal and income of the trust. Rejecting the respondent's argument that the "transfer" within the meaning of section 811(c)(1)(B) of the 1939 Code, took place in 1944, when decedent released his power to amend the trust, and relying on the *Cuddihy* case as being controlling, we held that the decedent made a transfer in trust in 1930 and not in 1944, and that section 811(c)(1)(B) was thus inapplicable.

In *Cuddihy* we distinguished *Smith* v. *United States, supra*, factually, pointing out that the trust created by the decedent in the *Smith* case was revocable in favor of the settlor by her joint action with her husband alone, whereas the transfer in *Cuddihy* was completely irrevocable. This case is also factually distinguishable from the *Smith* case because, as previously noted, under State law the trust was irrevocable and the settlor could not revoke the trust in her favor without the consent of all beneficiaries. But in both *Cuddihy* and *Ridgway* we also disagreed with the interpretation of section 811(c)(1)(B) of the 1939 Code, made by the majority of the Court of Claims in the *Smith* case. While the statute involved here is section 2036 of the 1954 Code, the wording thereof is precisely the same as that of section 811(c)(1)(B) of the 1939 Code, as amended, and we conclude, after reexamining the legislative and case law history which developed as a result of the

Supreme Court decision in *May* v. *Heiner*, 281 U.S. 238, and its overruling in *Commissioner* v. *Estate of Church*, 335 U.S. 632, and bringing it up to date through the enactment of the 1954 Code, that our interpretation of section 811(c)(1)(B) in the *Cuddihy* and *Ridgway* cases is correct and controlling with respect to our application of section 2036 of the 1954 Code here.

We believe our conclusion is fortified by the fact that Congress, 5 years after the decision in the *Church* case, which occasioned the adoption of the exception provision, in reviewing and rearranging the estate tax provisions in the 1954 Code, used the same plain and unambiguous language in section 2036 that had been contained in section 811(c)(1)(B) of the 1939 Code, but separated this provision from those involving transfers in contemplation of death and those taking effect at or after death with which it had been coupled in section 811(c) of the 1939 Code. Section 2036 is entitled "Transfers With Retained Life Estate" and pertains only to transfers under which the transferor *retained* for life (1) the possession, enjoyment, or right to the income from the property, or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom. To attempt to apply this section to decedent's release of her power of appointment in 1942 in this case would require us either to read additional words, such as "completed" or "irrevocable," into the section, or ascribe to the word "transfer," as used in this section, a meaning which would include not only the normal concept of the word but also concepts which have their foundation, if any, in gift tax or income tax law.

Had Congress intended the release of a power of appointment to be included within the meaning of "transfer" as used in section 2036, it is reasonable to think that it would have said so. Section 2035 includes in the gross estate transfers made in contemplation of death and subsection (b), in explaining the application of the rule, specifically states that such transfers include the relinquishment, exercise, or release of powers of appointment. Section 2037 includes in the gross estate transfers taking effect at death and excludes from application of the section an interest in property the possession or enjoyment of which could have been obtained by a beneficiary during decedent's life by the exercise of a general power of appointment. Section 2038, dealing with revocable transfers, includes in the gross estate the value of property transferred where the enjoyment thereof was subject at the date of decedent's death to any change through the exercise of a power to alter, amend, or revoke, or where such power was relinquished in *contemplation of death*. And section 2041 includes in the gross estate the value

of property with respect to which a general power of appointment is exercised by decedent, it being specifically stated that the release of such a power created before October 21, 1942, shall not be deemed an exercise thereof. But section 2036 gives no indication that the transfer referred to therein means anything other than the transfer by which the decedent specifically transfers property and at the same time retains for his life the right to possess, enjoy, or receive the income from the property, or the right to designate beneficiaries.

Section 2036(a) would clearly be applicable to the transfer whereby this decedent originally created the trust in 1919, except for section 2036(b). It is equally clear that section 2036(b) would prevent application of section 2036(a) to this transfer made in 1919. But we cannot see how the transaction by which decedent released her power of appointment in 1942 could be considered a transfer described in section 2036(a) without adding words to that section as written. By releasing her power of appointment decedent did not *retain* her right to designate beneficiaries—she gave up a right she already had. And by releasing her power of appointment in 1942 decedent did not *retain* the right to income from the property for her life—she already had that.

Thus in our opinion it is very doubtful that decedent's release of her testamentary power of appointment in 1942 would qualify as a transfer under section 2036(a) even without section 2036(b). And respondent has pointed to no other section of the Code which would require inclusion of the trust in decedent's estate tax for estate tax purposes.

The following analysis also indicates that the "transfer" referred to in section 2036(b) could only apply to the transfer whereby decedent established this trust in 1919, and not to the release of her power of appointment in 1942.

Section 2036(b) says that section 2036 shall not apply to a transfer made before March 4, 1931. This must mean a transfer described in section 2036(a), otherwise the provision would be misplaced. A transfer described in section 2036(a) is one wherein the transferor reserves a life estate or the right to designate beneficiaries. Had the 1919 trust agreement reserved for decedent only the right to designate beneficiaries, section 2036(a) might[5] be applicable except for section 2036(b). But if section 2036(b) were to have any meaning under those circumstances it would have to refer to the transfer in 1919. Likewise, if the trust agreement had reserved only the right to income for life, section 2036(a) would be applicable except for section 2036(b). Again, if section 2036(b) is to have

---

[5] Assuming that the right to designate beneficiaries as used in section 2036(a) includes the right to designate at death as well as during life, a question we do not decide.

any meaning it would have to refer to the transfer in 1919. But if respondent's argument is correct we would have to conclude that where the 1919 trust reserved both the life income and the right to change beneficiaries, the word "transfer" used in section 2036(b) refers to a different transaction so that the release of one of these retained benefits, the right to change beneficiaries, resuscitates, so to speak, the retention of the life income so that it will be considered to have been retained after March 4, 1931, when the right to change beneficiaries was released. We cannot believe such a result was intended by Congress. The transfer referred to in section 2036(b) was the transfer in 1919 when these rights were retained. Hence, section 2036(a) does not apply to include the trust estate in decedent's estate for estate tax purposes.

Reviewed by the Court.

*Decision will be entered for the petitioner.*