## ARTHUR F. MORTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91494.   Promulgated April 4, 1940.

*Fred L. Rosenbloom, Esq.,* and *Theodore B. Benson, Esq.,* for the petitioner.
*Bernard D. Daniels, Esq.,* for the respondent.

### OPINION.

DISNEY: This proceeding involves income tax for the calendar year 1935. A deficiency of $195.56 was determined, all of which is in issue. A portion of the facts was stipulated and we find the

facts as stipulated. Additional evidence was adduced by testimony. The stipulated facts may be epitomized and the remaining facts stated as follows:

The petitioner is and for 17 years has continuously been a resident of Pennsylvania. He is a resident of Philadelphia and filed his Federal income tax return for the year 1935 with the collector at that city. In 1928 he created a trust the income of which was, by the terms of the declaration of trust, payable to his mother, Julia A. Nixon, for her life, thereafter to the settlor for life, and upon the death of both, the principal and all unpaid income was to be paid to the settlor's estate. The declaration further provided that the trust was revocable, by a written instrument, during the life of Julia A. Nixon by her and petitioner jointly, and by petitioner alone after her death. The petitioner was not trustee. During 1935 Julia A. Nixon received the income from the trust and received no other income. The petitioner did not report as his income the amount received by her from the trust. No return for 1935 was filed by or on behalf of Julia A. Nixon.

Prior to July 2, 1935, the trustee had permitted Julia A. Nixon to overdraw the income account by $386.16. On that date a trustee's commission of $160.24 was due. On July 16, 1935, the petitioner paid the two amounts, a total of $546.40, to the trustee and the deficit was eliminated. Exclusive of the $546.40, the trust income for 1935 was $2,222.02, the expenses of the trust were $161.02, and the cash payments by the trustee to Julia A. Nixon were $3,000, which was used in 1935 by Julia A. Nixon for her support and maintenance. Exclusive of the $3,000, the petitioner was the sole support of Julia A. Nixon during 1935.

Julia A. Nixon is and has been for about 35 years a resident of New Jersey, residing at the time of hearing at Atlantic City. Petitioner is her only child. In 1935 she was 58 years of age, very active, and in very good health, as she had been for some time prior to that date. She was then and prior thereto and is now a very capable woman, able to take care of herself. She did not own her own home in 1935 but rented, though she owned her furniture and household fixtures and facilities. She had in 1935 no means of support other than the income of the trust and the contributions of the petitioner. The petitioner's father died about 1909, when the petitioner was about twelve years of age. His mother worked hard to educate and support him. She took in roomers, boarded people, and did summer jobs. She was well educated, capable of taking different types of positions. She never received a regular salary. While the petitioner was in the Army she drew an allotment of his pay, as a dependent. In 1919 she married John Nixon, a postman in the Government service, who died in 1934. His income was sufficient

for them to live comfortably. In setting up the trust in 1928 the petitioner desired to give his mother something more than a mere existence and to give her a few extra luxuries. At that time she was living with her husband. She has never paid any part of the income of the trust to the petitioner and the trust instrument constitutes the only agreement between them. Petitioner is a certified public accountant, doing income tax work, but not specializing therein. He never discussed the taxability of the income here involved with his mother. He presumed that she had filed an income tax return for the taxable year, following his usual practice of preparing a return for her. She did not so file, though he prepared and filed a return for her for 1934 and 1936.

The respondent determined that $2,012.23 income from the trust was taxable to the petitioner, resulting in the deficiency of $195.56. Reference was made in the deficiency notice to article 166-1 (b) of Regulations 86, and the provision of the trust as to revocability by joint action of settlor and beneficiary. Upon brief respondent seems to abandon any dependence upon section 166 of the Revenue Act of 1934. At any rate, it is obvious that the instrument was revocable by the settlor only in conjunction with his mother and that she as beneficiary had the substantial adverse interest referred to in the statute. We therefore hold that the trust income was not taxable to the petitioner because of any provision of section 166.

By brief the respondent quotes section 167 (a) (2), Revenue Act of 1934, and Regulations 86, article 167-(1) (b), corresponding to the statute, and takes the position that the income of the trust was in fact applied to the satisfaction of a legal obligation of the petitioner to support his mother. He quotes section 1955, Purdon's Pennsylvania Statutes Annotated, on the subject of the duty of a child to support a parent, and relies upon the principles announced in *Douglas* v. *Willcuts*, 296 U. S. 1. On the contrary, the petitioner relies upon the conclusion expressed in *Jay C. Hormel*, 39 B. T. A. 244, that if the trust does not require use of the trust income for discharge of a legal obligation of the trustor, the income is not taxable to him, and argues that in any event he had no legal obligation to support his mother, under the circumstances herein involved.

After a review of the evidence, we are of the opinion that the petitioner's position as last stated must be sustained, and that there is no occasion to apply *Jay C. Hormel, supra.* That case presupposes a legal obligation to support. The obligation must of course be legal and not merely moral. At common law no duty of support of a parent was incumbent upon a child, 46 C. J. 1279, and we must therefore find it in statute. The mother was at all times a resident of New Jersey. The statutes requiring kindred to support each

other have no extra territorial force and will not be enforced by the courts of other jurisdictions. *De 'Brimont* v. *Penniman*, 7 Fed. Cas. No. 3715; 10 Blatchf. 436. The law of Pennsylvania alone can be of effect here. The law of Pennsylvania has been examined by us with some care. It provides for compulsory support by an adult child of parents who are "not able to work or of sufficient ability to maintain themselves." Section 17037, Pa. St., 1920 Compilation. Such a condition in petitioner's mother is negatived by the record here, which shows her to be or to have been in the taxable year active, in good health, capable, and well educated. We think this evidence is amply sufficient to overcome any presumption of correctness of the deficiency, if any arises in this respect, where the deficiency notice sets forth only reliance upon section 166 and the idea of revocable trust.

Moreover, it is apparent from the various statutes of Pennsylvania upon the subject that the Pennsylvania courts would not enforce an application for support from a resident of New Jersey. The petition or complaint must allege that the person for whose support defendant is sought to be charged is a poor person, chargeable or likely to become chargeable to the town or poor district. *George* v. *George*, 3 Pa. D. & C. 477. Obviously the petitioner's mother, in New Jersey, is not likely to become such charge. Again, section 17033, Pa. St., 1920 Compilation, provides as follows:

* * * the children * * * of every poor, old * * * or other poor person within said city, district and township, not able to work, being of sufficient ability, shall * * * relieve and maintain every such poor person as the mayor's court for the city, or the court of quarter sessions for the county *where such persons reside*, shall order and direct, * * *. [Italics supplied.]

Under the above language, the mayor's court or court of quarter sessions of any county other than the residence of the poor person would have no jurisdiction. There would be no such jurisdiction, as to petitioner's mother, in any Pennsylvania court.

Section 17034 also emphasizes the necessity for residence of the person to be supported, by providing for support at such rate as directed by the court of quarter sessions of the county *where such poor person resides*.

We understand that the municipal court in Philadelphia, where the petitioner resides, exercises, so far as here involved, the functions of the court of quarter sessions above designated in the statute. Section 15714 as to the jurisdiction of the municipal court confers such jurisdiction over "proceedings where any child of full age has neglected or shall neglect to maintain his or her parents, not able to work or of sufficient ability to maintain themselves"—the same

language as in section 17033, *supra*. Finally, sections 17057 and 17058 provide a penalty for bringing any poor person "from any place without this commonwealth to any place within it, where such person was not last legally settled, and there leave, or attempt to leave such person", and provides further that the guilty one "shall be obliged to convey such poor person out of the commonwealth, or support him at his own expense." From all of these provisions, we conclude and hold that there is no duty, under Pennsylvania law, upon the petitioner to support his mother.

*Decision of no deficiency will be entered.*