Sidney H. Scheuer v. Commissioner.
Scheuer v. Commissioner
Docket Nos. 108979, 109888.
United States Tax Court
1943 Tax Ct. Memo LEXIS 295; 2 T.C.M. (CCH) 118; T.C.M. (RIA) 43242; May 21, 1943
*295 Harry Silverson, Esq., and Charles H. Meyer, Esq., for the petitioner. Clay C. Holmes, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion These proceedings, which have been consolidated for hearing, arise from the Commissioner's determination of deficiencies in petitioner's income taxes for the years 1937, 1938 and 1939, in the respective amounts of $6,667.85, $8,846.62 and $9,810.62, resulting from the inclusion in petitioner's gross taxable income of the entire net income of three trusts established on November 13, 1934, by petitioner for the benefit of his three minor sons, and of the entire net taxable income of a trust established April 3, 1923, by petitioner for the benefit of his parents. Findings of Fact A partial stipulation of facts was filed by the parties, and the facts so stipulated are found to be facts in this case, and in so far as we deem them material to the issues presented, are set forth here, together with such other pertinent facts as were established by the evidence. Petitioner, a resident of New York City, filed his income tax returns for the tax years 1937, 1938 and 1939 with the collector for the second district of New York. The *296 trusts which are the bases of these controversies fall into two general classes: (a) three separate trusts for the benefit of the three minor sons of petitioner; and (b) a trust for the benefit of the petitioner's parents. (a) The Children's Trusts. In 1934, petitioner was engaged, as a partner, in the textile brokerage business, involving the use of substantial capital, and was constantly aware of the fact that his personal, as well as his partnership assets were subject to the considerable risks of his business. On November 13, 1934, petitioner established three irrevocable trusts, virtually identical in terms, for the benefit of his three minor sons, then aged 11, 6 and 3, for the purpose of protecting them and their futures from the hazards of his business. He was aware of the fact that his tax liability might be somewhat lessened by the establishment of the trusts, but his principal purpose was the irrevocable setting aside, in bona fide trusts, of certain sums of money for the benefit of his children, because of the financial risks which his business involved. Petitioner established the trusts with corpora consisting of a total of approximately $100,000 in cash and securities. *297 It was understood that his father would contribute approximately $50,000 to the trusts almost immediately, and additional amounts from time to time. Petitioner's father contributed a total of approximately $65,000 to the three trusts, and petitioner's wife contributed approximately $25,000, from the separate funds of each such donor. Respondent concedes that the income of the trusts from the portions of the corpus of each contributed by petitioner's wife and father are not taxable to petitioner. Petitioner and his father were named initial trustees, with broad powers of management and investment, and both were active and vigilant in the administration of the trusts. Petitioner's experience in the field of finance and investment has been extensive and successful, and his father also has had considerable experience in such matters. For these reasons and because of the fact that he disapproves of the methods and policies of corporate fiduciaries, petitioner constituted his father and himself as co-trustees. Article First of each of the three trust indentures provides substantially as follows: FIRST: The Grantor hereby transfers and delivers to the Trustees the cash and securities *298 enumerated in Schedule A hereto annexed, IN TRUST, for the following uses and purposes: (1) To receive the income therefrom, or from so much thereof as may from time to time remain in their hands after making the payments provided for in clause (2) of this article "First" of this indenture, during the life of [Beneficiary], one of the sons of the Grantor, hereinafter referred to as the "Beneficiary" and to apply the net income, or so much thereof as they may deem advisable, to the education, maintenance and support of the beneficiary during his minority; to accumulate the surplus income over the sums so applied and pay over such accumulations to the Beneficiary upon his attaining his majority; and to pay over the entire net income to the Beneficiary after he has attained his majority and until his death. (2) To apply to the education, maintenance and support of the beneficiary at any time or from time to time during his minority, and to pay over to the Beneficiary at any time or from time to time after he has attained his majority, such portion or portions of the principal of the trust, if any, as the Trustees in their sole and exclusive discretion may consider proper. (3) Upon *299 the death of the Beneficiary, to pay over the principal of the trust, or so much thereof as then remains in their hands, to such person or persons and in such manner and proportions as the Beneficiary shall have designated in and by his last will and testament; or in default of such designation, or to the extent to which the same if made shall not be valid or effectual, to pay over the same to the Grantor. During the years in question, none of the income or principal of the trusts was expended for the education, maintenance or support of any of the beneficiaries, but all of the income was accumulated for distribution to the respective beneficiaries under the terms of the indentures. This policy was agreed upon between the petitioner and his father as settlors and trustees as a proper method of effecting their intentions in establishing the trust, and was set forth in an exchange of letters between them, but the trust indentures were not amended so as to reflect such an intention on the part of the settlors. The collateral agreement as to policy embodied in the correspondence referred to did not effect any change in the trust instruments. The total net taxable income of the trust *300 for the benefit of Robert Scheuer for the years 1937, 1938 and 1939 from that part of the corpus contributed by Sidney Scheuer, was $2,171.25, $4,421.74 and $3,455.88, respectively. The amounts expended by petitioner from his own personal resources for the education, support and maintenance of Robert during those years were, respectively, $2,936.80, $2,560.00 and $2,324. The total net taxable income from that part of the corpus of the trust for Thomas Scheuer contributed by petitioner for the years 1937, 1938 and 1939 was, respectively, $2,626.65, $3,907.23 and $2,915.32. The amounts expended by petitioner from his own personal funds for the education, support and maintenance of Thomas Scheuer during 1937, 1938 and 1939 were $1,997.96, $1,653 and $1,348. The total net taxable income arising from that part of the corpus contributed by petitioner for the benefit of James Scheuer, during the years 1937, 1938 and 1939 was $2,248.26, $3,735.30 and $3,215.25, respectively. The amounts expended by petitioner from his own personal funds for the support, education and maintenance of James Scheuer during 1937, 1938 and 1939 were, respectively, $1,476.92, $1,417 and $1,884. (b) The Parents' *301 Trust. By indenture dated April 3, 1923, petitioner established a trust, with himself as the intial trustee, for the benefit of his parents, for the purpose of providing for a continuation of his policy of making voluntary contributions of money to them. At that time, petitioner's father was 56 years of age, his mother, 53, and the petitioner 29. The parents were then, and thereafter at all times continued to be, financially independent of petitioner, having means sufficient for their own support. Petitioner's father then had a net worth, exclusive of paid up insurance and other miscellaneous means, of approximately $25,000 to $30,000. By 1934, his net worth had increased to between $50,000 and $75,000. Petitioner had, for some time prior to 1923, made voluntary supplemental gifts to his parents, and he wanted to assure the payment of such sums to them in the future. After the creation of this trust petitioner made no other gifts of money to his parents. He had married in 1920, and established his own separate household. His business was then of the same general character as later, and as described hereinbefore, involved considerable financial risks. The trust indenture provided *302 that "The trustee shall pay over to, or expend, for the benefit of my said parents, Henry Scheuer and Sarah Scheuer, and/or the survivor of them, at least once a year, or at shorter intervals within the discretion of my said trustee, all of the net income from the said trust." The trust estate was to revert to petitioner, if he survived both his parents. If not, then the disposition of the corpus was otherwise provided for upon the death of the last surviving parent. The instrument further provided: I. The trust shall be terminable at any time by the joint consent of my father, Henry Scheuer, and my mother, Sarah Scheuer, and the trustee hereunder then acting, and of myself and in such event, the said trust estate shall revert to myself. The instrument further provides that "the trustee shall have the right from time to time, and at any time, to change the character or nature of the properties or the securities representing the corpus of the trust estate, and shall have and is hereby given full power and absolute right and power to sell, transfer or otherwise dispose of any of the property (whether cash, securities or otherwise) at any time constituting said trust estate." And, *303 further, "In the handling of the trust estate the trustee hereunder shall not be limited to investments of the kind specified by the State of New York for the investment of trust funds, but may at all times exercise his discretion and judgment as to the kind and character of the property that shall constitute in whole or in part of the trust estate." The trust has never been terminated, in whole or in part, and the income thereof has been paid over to petitioner's parents each year since its establishment, and was so paid during 1937, 1938 and 1939. Petitioner, as trustee, maintained a separate bank account for the moneys of these trusts; a separate cash brokerage account; a separate set of books of account; and regularly filed fiduciary returns. By an amendment to the petition filed at the hearing herein petitioner alleged as an additional error on the part of respondent the latter's failure to allow to the children's trusts during 1939 certain capital losses. To this amendment respondent filed a denial. No evidence on this issue was introduced by petitioner and we, therefore, find that no losses, described and set out in said amendment to the petition, were sustained by the trusts *304 established for petitioner's children during the year 1939. Opinion KERN, Judge: The Commissioner relies on Sections 22 (a), 166 and 167 of the Revenue Act of 1936, as authority for including the income from the trusts here involved in petitioner's taxable income. (a) The Children's trusts. These trust instruments were irrevocable and no question therefore arises under section 166. The income from these trusts could not be held or accumulated for future distribution to the grantor, not only by reason of the terms of the instrument itself, but also because of the provisions of the laws of the State of New York. (New York Personal Property Law, Section 16.) Section 167 (a) (1) is not applicable. Section 167 (a) (2) and Section 22 (a) present a different problem, however. So much of the income of each of these trust estates, and of the principal, as was deemed advisable by the trustees, was specifically made available for the education, support and maintenance of the respective beneficiaries, for which petitioner was legally responsible. Petitioner contends that the interests of petitioner's father, grandfather of the beneficiaries, and a co-trustee with petitioner, were substantially *305 adverse to the grantor, and have the effect of taking the situation out of the purview of Section 167 (a) (2). He identifies that interest as the contingent legal liability of the grandfather for the support of the children, under the laws of New York. We do not consider this interest of the grandfather sufficiently adverse or substantial to meet the demands of this section. In the case of Mary A. Cushing, 38 B.T.A. 948, we held the mother of the grantor not to be possessed of substantial or adverse interests, where her rights were contingent upon her surviving the grantor, or, if destitute, to demand support. The contingent liability of petitioner's father, in this case, for the support of the trust beneficiaries seems equally remote. The fact that none of the income was used for the support and maintenance of the minor beneficiaries, but all of it was, in fact, accumulated for them can not be regarded as important, since the decision of Helvering v. Stuart, 317 U.S. 154. There the net income of each of the four trusts involved was in excess of $9,000 for each of the taxable years. In the case of three of the trusts, *306 none of that income was distributed for any purpose, the children having been supported and maintained entirely by the settlor, their father, from his own funds. In the other trust, relatively small amounts, $1,391.50 in 1934, and $1,882.50 in 1935, were distributed to the beneficiary, but no showing was made as to its use by such beneficiary. The Supreme Court held, as we interpret its decision, that the entire income was taxable to the grantor, and that decision is, of course, binding upon us. We conclude, therefore, that the entire income derived from that portion of the trusts contributed by petitioner is taxable to him. Respondent has conceded error in including in petitioner's income for the taxable years that income derived from the corpus contributed to the trusts by petitioner's father and petitioner's wife. (b) The Parents' Trust. The two theories advanced by respondent to justify his action with respect to the parents' trust are, first, that the interest of the beneficiaries, whose consent was required jointly with the grantor's to effect a revocation of the trust, was not substantially adverse to the grantor, and, second, that the grantor retained such control *307 of the corpus of the trust as to constitute a virtual retention by him of the ownership thereof. The parents of petitioner were the sole beneficiaries of the trust, and the entire income thereof was, by the terms of the indenture, required to be paid to them, annually or oftener, and was, in fact, so paid to them. Petitioner was under no present legal obligation to support his parents, since they were possessed of independent means amply sufficient for their maintenance. See Section 914, Code of Criminal Procedure, N. Y., wherein it is provided: The * * * child * * * of a recipient of public relief, or of a person liable to become in need of public relief shall, if of sufficient ability, be responsible for the support of such person. * * * Constructive receipt by petitioner by reason of the satisfaction of his legal obligations, so as to render this income taxable to him under Section 22 (a), or Section 167 (a) (2), can not, therefore, be established. The degree of control which petitioner, as trustee, has in the management and investment of the trust estate, considered in connection with the other circumstances present in this case, does not justify holding him to be the owner *308 thereof for tax purposes. Commissioner v. Armour, 125 Fed. (2d) 467. Since it was not within the discretion of petitioner, or any other person whatever, to distribute the income to petitioner, or to hold or accumulate the income thereof for distribution to petitioner, or to do anything with reference to that income except to pay it to the beneficiaries in accordance with the express terms of the trust indenture, and since the grantor owed the beneficiaries no legal obligation of support, Section 167 does not apply. Respondent urgently contends that the beneficiaries of this trust, parents of the grantor, did not have a "substantial adverse interest" in the disposition of the corpus, or the income thereof, within the meaning of Section 166, and that petitioner therefore had power to revest the corpus in himself. None of the cases cited by respondent in support of this contention sustains it. Here the beneficiaries have a vested, present right to receive the entire current income of the trust. A more substantial interest in the income is hard to imagine. And we think the interest is adverse, within the meaning of the statute. The parents here had their *309 separate, independent means, and maintained their separate household. That the family relationship was affectionate and close is attested by the very existence of this trust, but there is no evidence whatever that the parents had sacrified their independence of spirit or action. There were, in reality, two separate, distinct economic units. This court has repeatedly and recently held the income beneficiary to have a substantial adverse interest. Robert S. Bradley, 1 T.C. 566; James G. Heaslet, 47 B.T.A. 1006; Meyer Katz, 46 B.T.A. 187; Mary W. Pingree, 45 B.T.A. 32; Arthur F. Morton, 41 B.T.A. 742. The income from the parents' trust is not taxable to petitioner. Decision will be entered under Rule 50.